Quinton A. RUSSELL, Appellant,

v.

UNITED STATES, Appellee.

No. 95–CF–147.

District of Columbia Court of Appeals.

Argued May 14, 1997.

Decided July 31, 1997.

Mitchell S. Baer, appointed by Court, for appellant.

Elizabeth H. Danello, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney at time the brief was filed, and John R. Fisher, Roy W. McLeese, III, Patricia A. Riley, and Julie A. Grohovsky, Assistant United States Attorneys, on the brief, for appellee.

David A. Reiser, Public Defender Service, with whom James Klein, Public Defender Service, on the brief, as amicus curiae.

Before FERREN, STEADMAN, and KING, Associate Judges.

KING, Associate Judge:

Quinton A. Russell was convicted of first degree sexual abuse (rape) pursuant to D.C.Code § 22–4102 (1996 Repl.), a new statute which became effective on the very day of the incident for which Russell was charged.[1] In this appeal Russell contends that the trial court violated his due process rights by instructing the jury that he bore the burden of proving by a preponderance of the evidence that the victim consented to the

sexual act.[2] Russell also contends that the trial court erred by failing to instruct the jury that it must consider any evidence relating to consent, regardless of whether he proved consent by a preponderance of the evidence, in deciding whether the government proved each element of the offense beyond a reasonable doubt.

With respect to the instructions issue, the government agrees that the better course would have been for the trial court to inform the jury that Russell's consent evidence was relevant to the issue of force. It contends, however, that because Russell did not request such an instruction, our review is for plain error which is not present here. Further, the government also contends, viewing the instructions as a whole, that the trial court's failure to clarify this point was not reversible error. We agree with Russell that reasonable jurors would likely have understood the instructions given by the trial court to preclude them from considering any of Russell's evidence of consent, unless they first determined he had proven consent by a preponderance of the evidence, when they considered whether the government had met its burden of proving the element of force. We are also satisfied that Russell preserved this issue by requesting that the trial court give certain instructions and by objecting to the instructions given by the trial court. Therefore, we reverse Russell's conviction and remand for a new trial.

## I. Background

In 1994, the Council for the District of Columbia ("Council") passed, and the Mayor signed into law, The Anti–Sexual Abuse Act of 1994,[3] which is codified at D.C.Code § 22–4101 et seq. (1996 Repl.). The new statute became effective on May 23, 1995, and replaces the previous rape statute, D.C.Code § 22–3801 (repealed 1995), as well as the previous seduction, indecent acts with children, and sodomy statutes. See D.C.Code §§ 22–3001, –3002, –3501, –3502 (repealed

---

**1.** In addition to the sexual abuse charge, Russell and two co-defendants were charged with first degree burglary. Each was acquitted of that offense.

**2.** We resolve this issue in the government's favor in Part V., *infra.*

**3.** D.C. Law 10–257, 42 D.C.Reg. 4101.

1995). Its provisions create four degrees of felony sexual abuse and one offense of misdemeanor sexual abuse, as well as various offenses against children, wards, patients, and clients. In addition, the new statute creates affirmative defenses, which the defendant must prove by a preponderance of the evidence, to certain of the offenses. *See* D.C.Code §§ 22–4107 (consent), –4111(b) (marriage between defendant and child), –4117(b) (marriage between defendant and victim). The new sexual abuse statute was intended to modernize this area of law in the District of Columbia, and in particular was intended to change the focus of the criminal process away from an inquiry into the state of mind or acts of the victim to an inquiry into the conduct of the accused. To this end, the new provisions do not include "lack of consent" as an element of the offenses.[4] We are concerned here only with the offense Russell was convicted of, first degree sexual abuse, § 22–4102, and the affirmative defense of consent, § 22–4107,[5] which Russell asserted at trial.

## II. Facts

On the afternoon of May 23, 1995, the complainant and two other teenage girls were in an apartment where one of them resided, while Russell and several other young men, with whom the girls were previously acquainted, were outside the building. At some point the two other girls went out onto the apartment's balcony and conversed with the young men. When the girls would not come out of the apartment, the young men threw some rocks onto the balcony. In response, the girls called the police three times but gave false names and would not give their apartment number. The police never responded. At some point, one of the girls let Russell and his two co-defendants into the apartment. The complainant locked herself in one of the bedrooms but opened the door at the urging of one of the other girls, and Russell and his co-defendants entered the room.

The complaining witness testified that the defendants then told her to have sex with Russell, and when she refused, Russell forced her onto the bed; the co-defendants helped Russell to hold her down and to remove some of her clothing, but then left the room. The complainant testified that she fought back and screamed, and that Russell hit her in the face, choked her, bit her, and then raped her. She said that Russell did not leave the bedroom during the incident and estimated that she was alone in the room with Russell for about ten minutes. After the incident, the complainant dressed, went home, and called the police. She stated that Russell was still in the apartment when she left.

Russell denied raping the complainant. He testified that he had previously been with the complainant at other people's homes, and that on the day of the alleged assault the complainant agreed to smoke marijuana with him in the bedroom and to have sex with him if he used a condom and gave her some money. Russell testified that he agreed, went into the living room, got a condom and

---

4. The former rape statute, D.C.Code § 22–2801 (repealed 1995), defined the offense, in pertinent part, as "[w]hoever has carnal knowledge of a female *forcibly and against her will*" (emphasis added). The new provision, D.C.Code § 22–4102 (1996 Repl.), reads in pertinent part:

 A person shall be [imprisoned and may be fined] if that person engages in or causes another person to engage in or submit to a sexual act in the following manner:
 (1) By using force against that other person;
 (2) By threatening or placing that other person in reasonable fear that any person will be subjected to death, bodily injury, or kidnapping;
 * * *
 Section 22–4101(5) defines "force" as: "the use or threatened use of a weapon; the use of such physical strength or violence as is sufficient to overcome, restrain, or injure a person; or the use of a threat of harm sufficient to coerce or compel submission by the victim."

5. Section 22–4017 (1996 Repl.) reads:

 Consent by the victim is a defense, which the defendant must establish by a preponderance of the evidence, to a prosecution under §§ 22–4102 to 22–4106, prosecuted alone or in conjunction with charges under § 22–4118 or §§ 22–501 and 22–503.
 Section 22–4101 (4) (1996 Repl.) defines "consent" as: "words or overt actions indicating a freely given agreement to the sexual act or contact in question. Lack of verbal or physical resistance or submission by the victim, resulting from the use of force, threats, or coercion by the defendant shall not constitute consent."

returned to the bedroom. According to Russell, he and the complainant were in the bedroom for half an hour to an hour and engaged in oral sex and then intercourse, but he stopped and left without paying the complainant because he did not find the sex pleasurable.

One of the other girls was called as a government witness. Her testimony supported some of the complainant's testimony but also corroborated several points of Russell's testimony.[6] The witness admitted that during the alleged rape, she and the other girl were in the living room with ready access to a telephone but did not call the police again, and that they spoke on the telephone to the mother of one of the girls. A physician who examined the complainant approximately six hours after the incident testified that the complainant had superficial scratch marks on her neck, cheek and finger, a bite mark on her breast, and a small laceration just outside her vagina. The physician also testified that the complainant reported that she had had consensual sex two days prior to the incident and appeared to be calm at the time of the examination.

### III. Discussions Concerning the Jury Instructions

Because our resolution of this appeal depends in significant part upon whether the instructions issue has been preserved, we will describe, in some detail, the representations made by counsel and the trial judge in the course of the discussions concerning jury instructions. At the outset we note that counsel for Russell objected, before and throughout the trial, to the statutory provision placing the burden of proof of consent on his client, and to the jury instructions (as proposed and as given) on this issue. In addition, Russell objected to instructions proposed by the government. Although the trial judge stated that he did not believe that Russell had a viable constitutional challenge to the statutory provision, the judge assured counsel for Russell at least three times that he had preserved the issue for appeal. Counsel for Russell specifically requested, and the court agreed to provide copies of written instructions and to give counsel "a chance to comment upon it to preserve the record."

When given that opportunity, counsel for Russell asserted that

> [t]he problem with the instruction and the statute ... is that it shifts the burden of proof to the defendant on an element that ordinarily the Government would have to prove beyond a reasonable doubt ... which is the element of force. And our position is that consent is just the opposite side of the same coin and that it's a violation of due process to require the defendant in a rape case to prove by a preponderance of the evidence consent.

The trial court did not agree with counsel that the instruction and statute were unconstitutional, but stated that "obviously, you have preserved your record" for appeal. Counsel for Russell then made specific requests with respect to the proposed jury instructions:

> With regard to how the defense is worded in terms of consent, we would ask the court to add that the defendant is not required to prove consent beyond a reasonable doubt. Just make it absolutely clear.... We would like it to be crystal clear and I believe there is language that in fact [sic] in the insanity instruction, which I think this is sort of patterned after.
>
> I would ask the court to look at the insanity instruction ... instruction 5.07 ... in the insanity instruction there in defense, the defendant is not required to prove this defense of insanity beyond a reasonable doubt.
>
> Then I would also like ... something to the effect of if you find by a preponderance

---

6. The witness testified that the co-defendants threatened to shoot if the girls did not open the apartment door, that the complainant screamed during the incident and cried afterward, and that the co-defendants blocked the doorway to the bedroom during the incident. However, the witness also testified that Russell and the complain- ant were in the room for one half to one hour, that Russell came out of the room and got a condom, that she saw the complainant lying on her stomach with Russell on top of her (the complainant testified that she was never on her stomach during the incident), and that Russell left the apartment before the complainant.

of the evidence that the complainant consented to the alleged sexual act, you must find the defendant not guilty.

The court agreed to the last request: "That's fair. Sure, that makes sense. I will do that."

However, when the trial court, the next day, returned to the issue of the jury instructions, it expressed doubt about that requested instruction, stating:

[i]f there is consent in a case then obviously there would have to be a preponderance of the evidence to get that issue before the jury, the issue of consent. It may be simply more like a legal issue for the Court, but I'm uncomfortable in light of the way the statute was written. I still think ultimately if there is evidence of consent, and there is based upon Mr. Russell's testimony, and if I think the preponderance is sufficient to get that issue before the jury, I still think the Government has to prove beyond a reasonable doubt that the consent was not voluntary.

The trial judge acknowledged that this was a difficult issue and that he was unsure of what the legislature intended—whether it intended to shift the burden of proof or simply recognize that the government was not required to show that the victim resisted. The prosecutor responded to the judge's concerns by suggesting that the proposed instruction be modified by inserting this language: "if you find that the defense has established by a preponderance of the evidence that the complaining witness consented, the burden shifts to the Government to prove that the consent was not voluntary." When the judge stated that he thought the prosecutor's suggestion was probably accurate, counsel for Russell stated he was preserving his objection from the previous day. Counsel for Russell then articulated his understanding of the proper application of the new statute:

[T]he government has to prove beyond a reasonable doubt that there was force, there was a forcible rape, if you will. And if they haven't met that burden, and then we don't even get to the affirmative defense of consent and I think I'm entitled to argue that and to argue that ... our evidence of consent applies to their burden to

prove beyond a reasonable doubt that this was a forceful act.... [T]here are two ways that the jury must return a verdict of not guilty. If they find either ... that [the government] didn't meet their burden of proving a forcible sexual act, or if they find by a preponderance of the evidence that there was consent.

The trial court replied, "Okay, I think that's captured."

Russell's closing argument included an argument along these lines. In rebuttal, the government argued that the only question in this case was consent and that the defense had the burden to prove it by a preponderance of the evidence. The trial court instructed the jury as follows:

The essential elements of the offense of first degree sexual abuse, each of which the government must prove beyond a reasonable doubt, are:

One, that the defendant knowingly engaged in or caused [the complainant] to engage in or submit to a sexual act by using force against [the complainant].

Force means the use of physical strength or violence as is sufficient to overcome, restrain or injure a person or the use of a threat of harm sufficient to coerce or compel submission by the victim....

I would like to talk to you now about consent with respect to the offense of first degree sexual abuse. Consent by the victim is a defense to the charge of first degree sexual abuse which the defendants must establish by a preponderance of the evidence.... If you find that Mr. Russell has proven by a preponderance of the evidence that [the complainant] consented to the sexual act, then the government must prove beyond a reasonable doubt that the complainant's consent was not voluntary. If the government fails to prove beyond a reasonable doubt that there was no voluntary consent, you must find the defendant not guilty.

At the bench conference following the court's instructions to the jury, counsel for Russell objected to the instruction because it placed the burden on the defendant to prove consent, and because

even assuming for the sake of argument that's valid, our position would be that once the defendant proves by a preponderance of the evidence that there was consent, then the jury must find him not guilty. That would not then place the ball back in the government's court to prove there was no consent [ ] beyond a reasonable doubt.

The trial court did not modify the jury instruction. It stated that there was some ambiguity, but that there has to be some preponderance of the evidence before consent ever gets in the case; once such evidence was in the case, the government must prove the consent was not voluntary.

## IV. Standard of Review

The government agrees that the better course would have been for the trial court to instruct the jury that when deciding the question of force it should consider the evidence presented on the question of consent.[7] The government contends, however, that it was not reversible error to omit that clarification even had it been requested, and, in any event, our review should be for plain error because counsel for Russell failed to sufficiently preserve the issue for appeal and in particular failed to specifically request an instruction on the relationship of consent evidence to the issue of force. We will address the latter point first.

 In order to preserve an issue of jury instructions for appeal, a party must state "distinctly the matter to which [he] objects and the grounds of the objection." Super. Ct.Crim. R. 30. In other words, objections to jury instructions must be specific enough to direct the judge's attention to the correct rule of law; a party's request for jury instructions must be made with sufficient precision to indicate distinctly the party's thesis. *See Hasty v. United States*, 669 A.2d 127, 134

(D.C.1995); *Cowan v. United States*, 629 A.2d 496, 503 (D.C.1993).

Normally, requests for specific jury instructions should be submitted, in writing, to the trial court. However, under the circumstances here, where the issue was one of first impression concerning a radical departure from the previous statute, and where there was considerable discussion on the issue between counsel and the court throughout the trial, we think that counsel's failure to submit written requested instructions or to state his objections with exact precision does not compel plain error review. Counsel stated succinctly his thesis that "our evidence of consent applies to their burden to prove beyond a reasonable doubt that this was a forceful act." With respect to the court's instruction that the government had a burden to prove that "consent was not voluntary," counsel objected that the correct rule of law was that "once the defendant proves by a preponderance of the evidence that there was consent, then the jury must find him not guilty. That would not then place the ball back in the government's court to prove there was no consent [ ] beyond a reasonable doubt." In addition, the trial court repeatedly assured counsel that the issue had been preserved. Under these circumstances, plain error review is unwarranted because the trial court was clearly on notice that Russell objected to the court's instructions, that Russell's position on the correct rule of law differed from the court's, and that Russell maintained that the jury should have been instructed that in deciding the element relating to force it should consider evidence on consent. *See Smith v. United States*, 687 A.2d 1356, 1359 n. 1 (D.C.1996) (issue of jury instructions preserved for review even though appellant did not specifically object to the court's definition of reasonable doubt, where appellant objected to burden-shifting instruction proposed by court, objected to deviation from standard jury instruction, and court stated

---

**7.** The government stated in its brief that "it well may have been desirable for the trial court to say more than it did" about how Russell's affirmative defense evidence relates to the essential element of force, and agreed that "an instruction expressly outlining the proper use of any defense evidence of consent in those sexual abuse cases in which defendants choose to raise the affirmative

defense would be helpful." This position is captured in the government's proposed standard jury instruction for first degree sexual abuse, which expressly tells the jury that "[e]vidence that may be relevant to the defendant's affirmative defense of consent may also be relevant to the issue whether the government has proved beyond a reasonable doubt the offense...."

that objection was preserved); *Hasty, supra,* 669 A.2d at 134–35 (issue of instructional error preserved for appeal because "there was a sufficient record to direct the judge's attention to the correct rule of law," even though appellant did not explicitly request instruction on the precise standard, where appellant requested a related instruction on same issue, referred to case enunciating the correct rule of law, and objected to the instruction given); *cf. Johnson v. United States,* 387 A.2d 1084, 1088 (D.C.1978) (en banc) (exceptions to jury charge must be specifically made in order to give the court opportunity to correct any errors or omissions). Because that omission was fatal, for the reasons stated below, we must reverse Russell's conviction.

### V. The Instructions Given

Although the government concedes that it might have been helpful for the trial court to expressly instruct the jury that consent evidence is relevant to the question of force, it first contends that no such instruction is mandated by *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), which held that the Due Process Clause requires the government to bear the burden of proving every element of an offense beyond a reasonable doubt. Moreover, the government argues that because the trial court's general charge instructed the jury that the government must prove guilt beyond a reasonable doubt and that this burden of proof never shifts throughout the trial, and because the jury was not specifically instructed that they could not consider Russell's consent evidence unless he had proved it by a preponderance of the evidence, the jury was not precluded from considering whether Russell's consent evidence raised a reasonable doubt on the element of force. We reject both contentions.

■ The legal standard for reviewing jury instructions claimed to impermissibly restrict a jury's consideration of relevant evidence is "whether there is a reasonable likelihood that the jury has applied the challenged instruc-

tion in a way that prevents the consideration of constitutionally relevant evidence." *Boyde v. California,* 494 U.S. 370, 380, 110 S.Ct. 1190, 1198, 108 L.Ed.2d 316 (1990); *see also Victor v. Nebraska,* 511 U.S. 1, 6, 114 S.Ct. 1239, 1243, 127 L.Ed.2d 583 (1994) (the proper inquiry is whether there is a reasonable likelihood that the jury *did* apply the instruction in an unconstitutional manner). The general jury instruction on the government's burden to prove the elements of the offense beyond a reasonable doubt is not necessarily sufficient, by itself, to overcome other confusing or ambiguous instructions on the burdens of proof. *See Sandstrom v. Montana,* 442 U.S. 510, 518–19 & n. 7, 99 S.Ct. 2450, 2456–57 & n. 7, 61 L.Ed.2d 39 (1979) (potential for impermissible interpretation of jury instruction on burden of proof was not removed by general instruction on government's burden to prove elements beyond a reasonable doubt).

■ Here, the trial court gave the standard general instruction on the government's burden of proof, but did not inform the jury that it could consider Russell's evidence of consent with respect to the question of whether the government proved beyond a reasonable doubt that the act was accomplished by force. The government argues that the general instruction was sufficient to assure that the jury understood that the ultimate burden to prove guilt beyond a reasonable doubt never shifted to the defendant. However, in *Martin v. Ohio,* 480 U.S. 228, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987), we think the Supreme Court made it quite clear that when a defendant raises an affirmative defense, and evidence has been presented by either the defendant or the government which is relevant to that defense, the jury must be free to consider that evidence, unless the legislature has properly provided otherwise,[8] in connection with its determination whether the government has proven the elements of the offense beyond a reasonable doubt. Moreover, the jury must be told that it can consider the evidence for that purpose.

---

**8.** *See Montana v. Egelhoff,* —— U.S. ——, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996), and discus-sion *infra* at 1014–1016.

In *Martin,* the Court upheld an Ohio statute that required the defendant to prove, by a preponderance of the evidence, an affirmative defense of self-defense to a charge of aggravated murder. *Id.* at 233, 107 S.Ct. at 1101–02. The Court was satisfied that the instructions given in that case did not prevent the jury from considering the defendant's self-defense evidence. *See id.* In addition, the *Martin* jury was specifically told that it could acquit the defendant if it found that the defendant had proved the elements of self-defense by a preponderance of the evidence. *Id.* The Supreme Court concluded that

> [i]t would be quite different if the jury had been instructed that self-defense evidence could not be considered in determining whether there was reasonable doubt about the State's case, *i.e.,* that self-defense evidence must be put aside for all purposes unless it satisfied the preponderance standard. Such an instruction would relieve the State of its burden and plainly run afoul of *Winship*'s mandate. *The instructions in this case could be clearer in this respect, but when read as a whole, we think they are adequate to convey to the jury that all of the evidence, including the evidence going to self-defense, must be considered in deciding whether there was a reasonable doubt about the sufficiency of the State's proof of the elements of the crime.*

*Id.* at 233–34, 107 S.Ct. at 1102 (emphasis added) (citation omitted).

The principle of law set out in the italicized material above has been applied, in circumstances similar to those present here, by virtually every federal and state court which has addressed the issue. In *Humanik v. Beyer,* 871 F.2d 432 (3d Cir.), *cert. denied* 493 U.S. 812, 110 S.Ct. 57, 107 L.Ed.2d 25 (1989), the Third Circuit analyzed *Martin* and the prior case of *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977),[9] and concluded that "the charge to the jury must make it clear that the jury can consider the defendants' evidence as it relates to the 'element of the crime' issue ... regardless of whether the jury believes the defendants' evidence more likely true than not true. Otherwise, a conviction would violate the *Winship* rule...." *Id.* at 440. Similarly, the Sixth Circuit concluded that "statutorily designated 'affirmative' defenses, on which the defendant bears the burden of proof, may be defenses that also raise a reasonable doubt about the prosecution's case." *Rhodes v. Brigano,* 91 F.3d 803, 809 (6th Cir.1996) (citing *Martin, supra,* 480 U.S. at 234, 107 S.Ct. at 1102, for proposition that jury may not convict "if the evidence offered by the defendant raises any reasonable doubt about the existence of any fact necessary for the finding of guilt"). Likewise, in *United States v. Westcott,* 83 F.3d 1354, 1358–59 (11th Cir.1996), the Eleventh Circuit cited the passage from *Martin* and held that a defendant's affirmative defense evidence of mental disease or defect constitutes evidence admissible to negate the mens rea element of the offense.[10]

Before we adopt the principles set forth in the foregoing authorities we must examine the effect, if any, the Supreme Court's decision in *Egelhoff* has upon the conclusion reached in *Humanik* and the other cases cited. In the plurality opinion in *Egelhoff,* Justice Scalia, speaking for himself and three

---

**9.** See discussion in Part V., *infra.*

**10.** Recent opinions by the state courts also reaffirm the principle stated in the *Martin* passage. For example, in *State v. Delibero,* 149 N.J. 90, 692 A.2d 981 (1997), the New Jersey Supreme Court held that

> a jury instruction should make clear that evidence of insanity may be relevant to the jury's determination of whether the State has proven beyond a reasonable doubt that ... the defendant possessed the requisite mental state.... When evidence relating to an affirmative defense also bears on the elements of an offense,

> the jury must be allowed to consider the evidence for that purpose as well.

*Id.,* 692 A.2d at 983, 987. *See also State v. Diego Vas,* 44 Conn.App. 70, 687 A.2d 1295, 1297 (1997) (evidence of affirmative defense of mental disease or defect must be considered by the fact finder in determining whether state has proven intent to commit murder); *People v. Jeffries,* 164 Ill.2d 104, 207 Ill.Dec. 21, 33, 646 N.E.2d 587, 599 (1995) (to convict, the jury was required to find beyond a reasonable doubt, based on all the evidence including defendant's affirmative defense evidence, each of the elements of the crime).

other justices, expressed the view that the quoted *Martin* passage was dictum, —— U.S. at ——, 116 S.Ct. at 2023, while Justice O'Connor in her dissenting opinion, speaking for herself and three other justices, observed that "[d]ictum or not, this observation explained our reasoning [in the *Martin* case] and is similarly applicable here...." *Id.* at ——, 116 S.Ct. at 2028. (In her separate opinion, the ninth justice, Justice Ginsberg, did not address the question of whether or not the passage was dictum.) In any event, even though the justices of the Supreme Court may not be in agreement about the binding effect of the *Martin* language we have quoted, the government has not argued that the passage is dictum. Rather, the government contends that quoted language does not say what the *Humanik* court says it does, *i.e.*, that "the charge to the jury *must* make it clear that the jury can consider the defendants' evidence as it relates to the 'element of the crime' issue, which the government has the burden of proof beyond reasonable doubt, regardless of whether the jury believes the defendants' evidence more likely true than not true." *Humanik, supra,* 871 F.2d at 440 (emphasis added). We are of the view that the *Humanik* court's reading of the quoted language from *Martin* is a fair one and should be applied by us. We recognize that the holding in *Egelhoff,* as discussed below, permits the legislature to place limits upon what evidence can be considered in this regard. However, because the Council here, like the legislature in *Humanik,* placed no such limits, we are satisfied that the language we have quoted from *Humanik* should be applied.

■ In *Egelhoff* the Court upheld, in the face of a due process challenge, a state statute making a voluntarily intoxicated person as responsible for his or her acts as a sober person. The Court was reviewing a Montana statute which provided that voluntary intoxication evidence was not relevant to a determination of the mental state which is an element of a criminal offense. *Egelhoff, supra,* —— U.S. at ——, 116 S.Ct. at 2016. The Court held that a legislature may, consistent with due process, redefine any element of an offense by omitting some component that had previously been included, and declare that any evidence relating to that component is irrelevant, so long as the component excluded is not a "fundamental principle of justice." *Id.* at ——, 116 S.Ct. at 2017. We can discern no indication here, and the government does not contend otherwise, that the Council has excluded consent evidence as relevant to the government's burden of proof,[11] as the Montana legislature had done with respect to voluntary intoxication evidence in the statute under review in *Egelhoff.* Therefore, because evidence relating to consent is relevant to the question of force, a failure to instruct the jury in that regard, where requested, does violate due process. *See Humanik, supra,* 871 F.2d at 440–41. The ruling in *Egelhoff* does not require a different result. On that point, we agree with the Ninth Circuit which recently observed in a post-*Egelhoff* case interpreting federal law:

> We recognize that [appellant] has no Due Process right to a defense of voluntary intoxication if the legislature chooses to exclude it. *See Montana v. Egelhoff,* —— U.S. ——, [ ] 116 S.Ct. 2103, 135 L.Ed.2d 361 (1996). When the defense is permitted by law, however, the defendant is entitled to have the jury consider it in order to determine whether the government has proved all the elements of the offense.... Thus a defendant has a constitutional right to have the jury consider defenses permitted under applicable law to negate an element of the offense.

*United States v. Sayetsitty,* 107 F.3d 1405, 1413–14 (9th Cir.1997); *accord, State v. Delibero, supra* note 10, 692 A.2d at 983.

■ In sum, although the government contends that the language in *Martin* should not be so read, we agree with *Humanik* and the other authorities cited, at least when the legislature has not specified otherwise, that the jury should be expressly instructed that it may consider the affirmative defense evidence when it determines whether the government has met its burden to prove all the

---

**11.** Nor do we express any view whether the Council could constitutionally exclude consent evidence as relevant to the government's burden of proof. See note 13 *infra.*

elements of the offense beyond a reasonable doubt. Indeed, although we did not discuss *Martin*, we have previously held that "failure to give an instruction embodying a defense theory that negates guilt of the crime charged, when properly requested and supported by any evidence, is necessarily reversible error." *Gray v. United States*, 549 A.2d 347, 350–51 (D.C.1988) (citations omitted). In *Gray*, the appellant presented evidence· tending to support an alibi defense to drug distribution charges, but which could have been interpreted in a manner not supporting the alibi. We observed that while a claim of alibi is not, strictly speaking, an affirmative defense, evidence of alibi tends to negate one fact (that the defendant was present at the scene of the crime) the government must prove as part of its case, and thus an alibi need only raise a reasonable doubt about that fact. *Id.* at 349 and n. 3. We held that the trial court erred in denying a defense request for an alibi instruction, because the appellant's alibi evidence met the standard of "any evidence" and therefore he was entitled to an instruction stating the substance of his defense theory. *Id.* at 349–51.

■■■ As we have said, the government does not dispute that Russell's evidence of consent is relevant to the question of whether the government proved the force element of the offense, and that it would have been desirable for the trial court to say more than it did on that point. Particularly in light of the trial record, which shows that the government and defense attorneys advocated conflicting interpretations of the new statute and that the trial judge was admittedly uncertain about his interpretation of the new statute, we have no difficulty in concluding

that lay jurors would likewise have been confused by the instructions actually given. Because there is "a reasonable likelihood that the jury has applied the challenged instruction in a way that prevent[ed] consideration of constitutionally relevant evidence," *see Boyde, supra*, 494 U.S. at 380, 110 S.Ct. at 1198, we hold that the jury instructions on first degree sexual abuse and on the affirmative defense of consent, as given, violated Russell's due process rights under the Constitution.[12]

## VI. Constitutionality of the Statutory Provision Requiring the Defendant to Prove Consent

■■■ Because we reverse appellant's conviction for the reasons stated in Part IV., we would ordinarily not decide the other issue presented, *i.e.*, the constitutionality of the requirement that the defense establish consent by a preponderance of the evidence. We do so in this case, however, in order to provide guidance to the parties and the court upon retrial. In light of our conclusion that the legislature did not exclude consent evidence as relevant to the government's burden of proof on the elements of the offense, we have no difficulty in deciding that the affirmative defense provision, D.C.Code § 22–4107 (1996 Repl.), does not offend the requirements of due process.[13]

The Supreme Court held in *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072–73, 25 L.Ed.2d 368 (1970), that the government must prove every element of an offense beyond a reasonable doubt. However, in *Patterson v. New York*, 432 U.S. 197, 210, 97 S.Ct. 2319, 2327, 53 L.Ed.2d 281 (1977), the

---

**12.** Although appellant has not directly raised the point in this court, *amicus* and the government agree, as do we, that the trial court misstated the law when it told the jury that even if Russell proved consent by a preponderance of the evidence, it must go on to determine whether the government had proved the consent was not voluntary. As counsel for Russell correctly asserted before the trial court, the jury could have found the defendant not guilty if it determined either that (1) the government did not prove beyond a reasonable doubt that the act was· accomplished by force, or (2) Russell proved, by a preponderance of the evidence, that the complainant consented to the sexual act. In determining whether a defendant has proved consent, voluntariness is

not the standard. The correct standard under the new statute is whether a reasonable person would think that the complainant's "words or overt actions indicate[d] a freely given agreement to the sexual act or contact in question." *See* D.C.Code § 22–4101(4) (1996 Repl.).

**13.** We express no view, however, on the question of whether the affirmative defense provision would ·withstand constitutional scrutiny if the Council had expressly excluded consideration of consent evidence on the issue of whether the government had established the applicable elements as part of its burden of proof.

Court held that state legislatures may, within the limits of due process, exclude an element of an offense from the definition of that offense and make that element an affirmative defense which the defendant must prove by a preponderance of the evidence. Ten years later in *Martin, supra,* the Supreme Court upheld an Ohio statute requiring self-defense to be raised as an affirmative defense to a charge of aggravated murder and to be proved by a preponderance of the evidence. In both *Patterson* and *Martin,* the Court noted that the affirmative defense in the case was a separate issue that did not require the defendant to disprove any element of the offense as defined in the statute. The Court emphasized

> the preeminent role of the States in preventing and dealing with crime and the reluctance of the Court to disturb a State's decision with respect to the definition of criminal conduct and the procedures by which the criminal laws are to be enforced in the courts, including the burden of producing evidence and allocating the burden of persuasion.

*Martin, supra,* 480 U.S. at 232, 107 S.Ct. at 1101. The *Martin* Court added that it was "not moved by assertions that the elements of aggravated murder and self-defense overlap in the sense that evidence to prove the latter will often tend to negate the former." *Id.* at 234, 107 S.Ct. at 1102.

The Supreme Court has declined to set forth a single test or specific guidelines for measuring "the limits of due process," *i.e.,* for determining when a legislature has exceeded its constitutional authority in defining the elements of an offense and allocating the burdens of proof. *See Schad v. Arizona,* 501 U.S. 624, 637, 111 S.Ct. 2491, 2499–2500, 115 L.Ed.2d 555 (1991) (plurality opinion of J. Souter). However, in light of the Court's holding in *Martin, supra,* its admonition that the courts "should not lightly construe the Constitution so as to intrude upon the administration of justice by the individual States," *see Patterson, supra,* 432 U.S. at 201, 97

S.Ct. at 2322; *see also Schad, supra,* 501 U.S. at 637, 111 S.Ct. at 2499–2500, our conclusion that the affirmative defense provision does not preclude the jury from considering the defendant's consent evidence as relevant to the government's burden to prove the elements of the offense, and the fact that the affirmative defense of consent focuses on something within the knowledge of the accused that he may fairly be required to prove—that the words or overt actions of the complainant reasonably indicated that the complainant freely agreed to engage in the sexual act—we are satisfied that the legislative determinations that are reflected in the new statute do not offend the requirements of due process.

## VII. Conclusion

Because the jury instructions, as given, were reasonably likely to have prevented the jury from considering all constitutionally relevant evidence, Russell's due process rights were violated. His conviction is therefore

*Reversed and remanded for a new trial.*