**Colin HATCH, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 08–CF–1362.

District of Columbia Court of Appeals.

Argued Feb. 24, 2011.
Decided Dec. 8, 2011.

Jessica Brand, Public Defender Service, with whom James Klein and Samia Fam, Public Defender Service, were on the brief, for appellant.

Stratton C. Strand, Assistant United States Attorney, with whom Ronald C. Machen Jr., United States Attorney, and Elizabeth Trosman, Suzanne Grealy Curt, and David M. Rubenstein, Assistant United States Attorneys, were on the brief, for appellee.

Before GLICKMAN and OBERLY, Associate Judges, and KING, Senior Judge.

GLICKMAN, Associate Judge:

Under the Anti–Sexual Abuse Act of 1994, the offense of first-degree sexual abuse is defined as the use of force to cause another person to engage in or submit to a sexual act.[1] Until recently, another provision of the same Act made consent by the victim an affirmative defense, "which the defendant must establish by a preponderance of the evidence."[2] This did not mean the defendant was required to carry the burden of proving that he did not use force. As we explained in *Russell v. United States,* requiring the defendant to prove consent as a defense to a prosecution for first-degree sexual abuse is compatible with due process because it does *not* require the defendant to disprove the element of force, on which the government bears the burden of proof.[3] Rather, if the government proves the sexual encounter was forcible, the defendant then may attempt to prove that the victim effectively consented *despite* whatever force was involved. Such consent is rare; mere submission by the victim to the use of force is not the equivalent of consent.

We also recognized in *Russell* that evidence of consent may be relevant to the issue of whether the defendant did in fact use force to engage the complainant in sexual activity. Consequently, we held, when the defendant has raised the affirmative defense, the court must instruct the jury that it may consider evidence of consent in determining whether the government has met its burden of proving the

---

1. D.C.Code § 22–3002(a)(1) (2011 Supp.).

2. D.C.Code § 22–3007 (2001). The Council deleted the requirement that the defendant prove consent by a preponderance of the evi-

dence in 2009. D.C. Law 18–88, § 213, 56 D.C.Reg. 7413 (Dec. 10, 2009).

3. *Russell v. United States,* 698 A.2d 1007, 1017 (D.C.1997).

defendant's use of force beyond a reasonable doubt—and not just in determining whether (if the jury finds the government has proved force) the defendant has proved consent by a preponderance of the evidence.[4]

Our opinion in *Russell* considered how the jury should be instructed with regard to consent when an affirmative defense of consent has been raised. We did not address whether it is proper for the court to instruct the jury on the defendant's burden to prove consent by a preponderance of the evidence when the defendant has *not* raised consent as an affirmative defense, but rather simply has denied any use of force in the sexual activity at issue. In the present appeal, we are confronted with that question.

Appellant Colin Hatch was tried on two counts of first-degree sexual abuse while armed and related weapons counts. The complaining witness claimed that Hatch forced her to have sex with him at gunpoint. Testifying in his own defense, Hatch admitted the sexual encounter but denied having used a weapon or force of any kind. He did not claim, nor was there evidence to show, that even if he did hold a gun on the complainant, she somehow consented to the ensuing sexual activity. Thus, Hatch did not raise an affirmative defense of consent. Nonetheless, over defense objection, the court instructed the jury not only that it could consider evidence of consent in determining whether the sexual encounter was forcible, but also that Hatch had the burden of proving con-

sent by a preponderance of the evidence. The jury returned a verdict of guilty on all counts.

We agree with Hatch that the court should not have given the instruction requiring him to prove consent in the factual circumstances of this case. The instructions were confusing, and there exists a reasonable likelihood that they led the jury to shift the burden of proof on the element of force from the government to the defense. Accordingly, we hold that Hatch is entitled to a new trial on the first-degree sexual abuse counts and the associated counts of possession of a firearm during a crime of violence.[5]

## I. Factual and Procedural Background

### A. The Government's Evidence

The charges against appellant stem from his encounter in the early morning hours of November 17, 2007, with a woman named Patricia Ancrum. As Ancrum testified at trial, she was standing on the corner of 10th and K Streets in northwest Washington, D.C., at 3:30 a.m., working as a prostitute, when Hatch drove up in a white Impala. After a brief conversation, they agreed on a price for a "date." Ancrum entered the car and they drove to a quiet street. They parked and climbed into the back seat.

Before proceeding further, Ancrum asked for payment up-front. At that, she testified, Hatch turned "mean," pointed a gun at her face, and told her "no, it's going to be free." Surprised and scared, Anc-

---

4. *Id.* at 1015–16.

5. The instructional error casts no doubt on Hatch's convictions for carrying a pistol without a license and possessing an unregistered firearm, which we therefore leave undisturbed.

Hatch also argues on appeal that the court erred by instructing the jury that, in weighing

his testimony, it could consider that he had "a vital interest" in the trial's outcome. *See Clifford v. United States*, 532 A.2d 628, 640 (D.C.1987). Our resolution of this appeal makes it unnecessary for us to address this claim. It is not certain that such an instruction will be given at the retrial of this case.

rum asked "why do you have to do this to me?" Hatch curtly told her he "didn't want to hear anything [she had] to say, don't say nothing to him no more." Ancrum decided to do what Hatch wanted in order to "get out of this thing alive." At Hatch's direction, she performed oral sex on him and allowed him to penetrate her vaginally. When Hatch finished and sat back down, Ancrum silently collected her belongings and left the car without interference. Hatch then drove off.

Using her cell phone, Ancrum called her friend Wilford Perry, who worked nearby. Perry drove over in his truck. As she told Perry what had happened to her, Ancrum noticed Hatch's white Impala turning onto 11th Street. Perry and Ancrum pursued the car onto New York Avenue. At Eastern Avenue, they saw a police cruiser leaving a convenience store parking lot. While Ancrum waited in the truck, Perry ran over to the cruiser. Officer Kief Green, who was inside, testified at trial that Perry pointed out a white Impala to him and said its driver was armed and had just robbed his friend.[6] Green followed the Impala and radioed for assistance. In a few minutes, the police signaled Hatch to pull over, which he did. Green asked Hatch if he had a weapon in the car. Hatch admitted he did. He was removed from the vehicle and handcuffed. In the glove compartment, the police found an unloaded .45 caliber handgun.

Hatch was shown to Ancrum, and she identified him as her assailant. After talking briefly with the arresting officers, Ancrum spoke with a police sergeant. After some initial hesitation, she told the sergeant that Hatch had sexually assaulted her at gunpoint. She repeated her account to two detectives and later that morning to a sexual assault nurse examiner (a "SANE" nurse) at Howard Universi-

ty Hospital. Subsequent DNA testing of vaginal swabs taken from Ancrum during her examination revealed the presence of Hatch's semen to a reasonable degree of scientific certainty.

## B.　The Defense Evidence

Hatch was the only witness called by the defense. He gave the jury a different account of his meeting with Ancrum. He maintained that she agreed to a sex-for-money transaction but afterward became infuriated when he could not pay her the additional money she demanded for the sexual acts she had performed, and that she then fabricated her accusation of a sexual assault at gunpoint in order to get back at him. Hatch denied that he ever held a gun on Ancrum, threatened her, or used force of any kind during their sexual encounter.

Hatch acknowledged owning the .45 caliber pistol found by the police in his car following his arrest. The gun was registered in his name in Maryland, where he resided. On November 16, Hatch testified, he had placed the unloaded weapon in his glove compartment with the intention of taking it to a shooting range that afternoon. As it turned out, though, he did not go to the range, but instead spent the rest of the day and evening socializing with friends. At around 2:00 in the morning, Hatch and his companions drove (in their separate cars) into the District of Columbia to visit a nightclub. Finding themselves unable to get into a club, the group split up, and Hatch started to drive home.

On the way, Hatch noticed Ancrum standing on the street corner. Hatch perceived her to be a prostitute and stopped to talk. After they exchanged a few words, Ancrum got into his car. Hatch

---

**6.** Perry did not testify at trial.

told her he "just want[ed] to have sex" and asked what it would cost. Ancrum said $100, but she agreed to take $60 when Hatch told her it was all he had. They drove to a residential area and parked. Hatch paid her the $60, and the two of them climbed into the back seat. Ancrum put a condom on Hatch and performed oral sex, after which they had vaginal intercourse.

When they had finished, Hatch testified, Ancrum turned to him and said he owed her $40 because the price they had agreed upon did not include oral sex. Hatch said he had no cash left. Ancrum became angry. She cursed at Hatch and insisted that he give her more money. He showed her his empty wallet.

Hatch testified that he then reached over and opened the glove compartment to retrieve some napkins with which to clean himself. He did not remove his handgun from the compartment (but it was visible to Ancrum at that point). Ancrum gathered her things and left the car, slamming the door behind her. Hatch got back into the driver's seat and was on his way home when the police pulled him over.[7]

### C. Jury Instructions

At the conclusion of the defense case, the judge discussed jury instructions with counsel. The instruction on first-degree sexual abuse, to which both parties agreed,

required the government to prove beyond a reasonable doubt that the defendant forced the complainant to engage in a sexual act. The instruction explained that "[f]orce means the threatened use of a weapon or the use of a threat sufficient to coerce or compel submission by the victim."[8] Hatch requested an instruction on the defense theory of the case, which read in pertinent part as follows:

> The defense maintains that in the early morning hours of November 17, 2007, Mr. Hatch never threatened the complaining witness with a gun, never pointed a gun at the complaining witness, and never forced the complaining witness to engage in any sexual activity. The defense maintains that Mr. Hatch and the complaining witness engaged in consensual sex.

The judge agreed to give this instruction. In view of Hatch's defense, the judge proposed also to give, with minor modifications, the then-standard "Redbook" Instruction No. 4.61 on the "Consent Defense to Sexual Abuse."[9] The instruction stated that the defendant "asserts the defense of consent" and told the jury that it could consider the issue of consent at two different stages of its deliberations. First, the instruction stated, the jury "may consider evidence of consent" in deciding whether the government had proved beyond a reasonable doubt that Hatch used force against Ancrum.[10] Second, the in-

---

**7.** The defense also introduced in evidence a photograph of Ancrum taken during her examination at Howard University Hospital. In the photograph, Ancrum was smiling. The SANE nurse described Ancrum's "cheerful" demeanor as a "coping mechanism" sometimes exhibited by victims of sexual assault. Ancrum herself attributed her upbeat attitude to the kindness with which the SANE nurse and other hospital staff treated her.

**8.** *See* D.C.Code § 22–3001(5) (defining "force" to mean "the use or threatened use of a weapon; the use of such physical strength

or violence as is sufficient to overcome, restrain, or injure a person; or the use of a threat of harm sufficient to coerce or compel submission by the victim").

**9.** *See* Criminal Jury Instructions for the District of Columbia, No. 4.61 (4th ed. rev. 2008).

**10.** *See Russell v. United States,* 698 A.2d 1007, 1015–16 (D.C.1997) (holding that "because evidence relating to consent is relevant to the question of force," the jury "should be expressly instructed that it may consider the

struction continued, if the jury found that the government had proved each element of first-degree sexual abuse (including the use of force) beyond a reasonable doubt, then the jury again "must consider whether Patricia Ancrum consented." Incorporating the language of (former) D.C.Code § 22–3007, the instruction explained that the defendant "has the burden of proving consent . . . by a preponderance of the evidence." This meant that "after considering all the evidence" the jury was obligated to decide whether "it is more likely than not that [Ancrum] consented." The instruction defined the term "consent" to mean "words or actions indicating a freely given agreement" to engage in the sexual acts and not merely a "lack of verbal or physical resistance" to the defendant's use of force.[11] Finally, the instruction concluded, "[i]f [the] defendant has met his burden of proving consent by a preponderance of the evidence," the jury must find him not guilty of first-degree sexual abuse; but "[i]f he has not met that burden," then it is the jury's "duty to find the defendant guilty of the charges."

Hatch objected to Instruction 4.61. His defense, he argued, was not that Ancrum consented at gunpoint—an absurd proposition—but that he never held a gun on her at all; Ancrum was a willing participant in their sexual encounter, he claimed, *because* he never forced her to comply with his wishes. Requiring Hatch to prove Anc-

rum's consent by a preponderance of the evidence therefore was equivalent to requiring him to disprove his alleged use of force against her. But the use of force is an essential element of the offense of first-degree sexual abuse that the government must prove beyond a reasonable doubt. By shifting the burden of proof on that element to the defense, Hatch asserted, the instruction would violate due process. And telling the jury it could consider evidence of consent at two stages in its deliberations made no sense, because if the evidence failed even to create a reasonable doubt that he used force, the same evidence could not possibly disprove his use of force by a preponderance of the evidence. The illogic of the instruction was so confusing, Hatch maintained, that the jury likely would misunderstand how to allocate the burden of proof with respect to the element of force.

The judge overruled Hatch's objections. Agreeing with the position taken by the government, the judge concluded that he was bound by D.C.Code § 22–3007 to charge the jury that the defense bore the burden of proving consent by a preponderance of the evidence.[12] In accordance with that ruling, and after instructing the jury on the government's burden to prove the elements of first-degree sexual abuse and the other charged offenses, the judge delivered Instruction 4.61 without substan-

---

affirmative defense evidence when it determines whether the government has met its burden to prove all the elements of the offense beyond a reasonable doubt").

11. *See* D.C.Code § 22–3001(4) (" 'Consent' means words or overt actions indicating a freely given agreement to the sexual act or contact in question. Lack of verbal or physical resistance or submission by the victim, resulting from the use of force, threats, or coercion by the defendant shall not constitute consent.").

12. The government also argued that it was critical to give Instruction 4.61 in order to ensure that the jury would not infer consent from Ancrum's lack of physical resistance, and to inform the jury that it could consider evidence of consent in deciding whether the government had met its burden of proving Hatch's use of force against Ancrum. Hatch did not oppose these aspects of the consent defense instruction.

tive modification, followed by the theory-of-defense instruction.

## II. Discussion

 The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."[13] As a corollary, the burden of persuasion may not be shifted to the defendant with respect to a defense that serves only to negate an element of the offense that the government is required to prove.[14] Rather, the burden is on the government to disprove such a defense beyond a reasonable doubt. Invoking these principles, Hatch argues that the trial court erred in giving the affirmative consent defense instruction, and that the instruction unconstitutionally encouraged the jury to shift the burden of persuasion to him on an essential element of the offense of first-degree sexual abuse—the element of force. We agree that the instruction placing the burden on Hatch to prove consent by a preponderance of the evidence should not have been given on the facts of this case. And considering that instruction, as we must, in "the context of the instructions as a whole and the trial record,"[15] we conclude there is a reasonable likelihood that the jury applied it in an unconstitutional manner, so as to dilute the government's burden of proof.[16]

The affirmative consent defense instruction should not have been given because Hatch eschewed it and—more fundamentally—because there was no factual basis for it. Hatch's defense at trial was limited to denying Ancrum's claim that he forced her to perform sexual acts by threatening her with a pistol. Rather, Hatch maintained, Ancrum participated in their sexual encounter without coercion on his part, in exchange for cash; and she fabricated her accusation of a forcible sexual assault (after having glimpsed his pistol in the glove compartment) to exact revenge for his refusal to pay her for all the sexual services he enjoyed.[17] Only in that sense did Hatch contend the sexual encounter was "consensual"; he never claimed that Ancrum was a willing participant *despite* his having held her at gunpoint, nor was there any evidence to support such a claim.[18]

This distinction makes all the difference, because it is both constitutionally impermissible and logically incoherent to place the burden of persuasion with respect to

13. *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

14. *Patterson v. New York*, 432 U.S. 197, 207, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). It is permissible, on the other hand, to place the burden of persuasion on the defendant to the extent he presents an affirmative defense to conduct that otherwise would constitute an offense. *Id.*

15. *Estelle v. McGuire*, 502 U.S. 62, 72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).

16. *See Victor v. Nebraska*, 511 U.S. 1, 6, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994) ("[T]he proper inquiry is not whether the instruction 'could have' been applied in an unconstitutional manner, but whether there is a reasonable likelihood that the jury did so apply it. The constitutional question in the present cases, therefore, is whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the *Winship* standard.") (internal citation omitted).

17. That Ancrum initially agreed to engage in sexual activity for a fee was not in dispute.

18. On the facts of this case, if the jury found beyond a reasonable doubt that Hatch pointed a gun at Ancrum and demanded that she provide her sexual favors for "free," there was no way the jury could have found that she consented by "words or overt actions indicating a freely given agreement" to the ensuing sexual acts. D.C.Code § 22–3001(4).

consent on the defendant if the claim of consensual participation is nothing more than a denial of the use of force, an element of the offense that the government has the burden of proving. A finding that the defendant used force is logically incompatible with a finding that the victim consented, in a case such as this, where consent is synonymous with the absence of force. An affirmative defense of consent to a charge of forcible sexual assault makes sense only in the unusual case in which there is evidence that the defendant's otherwise culpable use of force was excused—as where the complainant led the defendant to believe (if not correctly, then at least reasonably) that she engaged in sado-masochistic or "rough" sex willingly. Otherwise, it is "difficult to conceive [how] the government could establish force beyond a reasonable doubt yet the [defendant] could prove consent by a preponderance of the evidence." [19]

■ The question before us, then, is whether the error in giving Redbook Instruction 4.61 in the present case created a reasonable likelihood that the jury would be confused and shift or dilute the government's burden of proof on the element of force. The confusing nature of the instruction is what led the Council of the District of Columbia to amend D.C.Code § 22–3007 not long after the trial in this case so as to eliminate its placement of the

burden of persuasion on the defendant. Testifying before the Committee on Public Safety and the Judiciary in March 2009, United States Attorney for the District of Columbia Jeffrey A. Taylor identified the crux of the issue as follows:

> [J]uries are instructed that evidence of consent should be considered in assessing whether the government has proven beyond a reasonable doubt the element of force. Juries are then instructed that if the government has met that burden, the jury should consider whether the defendant has proven consent by a preponderance of the evidence. These two instructions are mutually exclusive, make no sense, and can add only confusion to the deliberations.[20]

The Council addressed the problem Taylor highlighted by excising the words "which the defendant must establish by a preponderance of the evidence" from § 22–3007,[21] so that the statute now simply states that "[c]onsent by the victim is a defense to a prosecution under §§ 22–3002 to 22–3006." [22] The committee report accompanying this amendment recited how "confusing" it was under the former statute that juries were "required to assess consent as an element of force (to be proved beyond a reasonable doubt) but then to consider whether the defendant proved

---

19. *Gaynor v. United States,* 16 A.3d 944, 948 (D.C.2011).

20. Statement of Jeffrey A. Taylor, United States Attorney for the District of Columbia, on Bill 18–138, the "Omnibus Anti–Crime Amendment Act of 2009," and Bill 18–151, the "Public Safety and Justice Amendments Act of 2009," before the Council of the District of Columbia, Comm. on Pub. Safety and the Judiciary, at 5 (March 18, 2009).

21. *See* The Omnibus Public Safety and Justice Amendment Act of 2009, D.C. Law 18–88, § 213, 56 D.C.Reg. 7413 (Dec. 10, 2009).

22. D.C.Code § 22–3007 (2011 Supp.). We are not called upon in this opinion to interpret the amended statute, and we express no opinion as to the allocation of the burden of persuasion under it where a defendant charged with first-degree sexual abuse claims that his use of force was excused by the complainant's consent. (Under the former statute, that burden was, permissibly, on the defendant.)

consent by a preponderance of the evidence."[23]

The temptation for jurors instructed to engage in this cognitively dissonant two-step process of deliberation is to merge the two inquiries. Where force and consent are merely the opposite sides of the same coin, it is hard for jurors considering whether the government has proven the use of force to ignore the instruction that the defendant must prove consent by a preponderance of the evidence—especially when the jurors have been instructed that they may consider evidence of consent in evaluating the government's proof. The affirmative consent defense instruction thus risks confusing the jury as to the government's burden of persuasion.

This confusion was on display in *Gaynor v. United States*.[24] Using the same standard Redbook instruction on the consent defense as was given in Hatch's case, the trial court in *Gaynor* directed the jury to consider evidence of consent in a two-step sequence: First, the jury could consider such evidence in deciding whether the government had proven all elements of first-degree sexual abuse, including force, beyond a reasonable doubt. Only if the jury found that the government had met its burden of proof was the jury to decide whether the defendant had proven, by a preponderance of the evidence, that the complainant had consented.[25]

During its deliberations, the *Gaynor* jury sent a note asking the trial court for clarification. "[I]f the defense cannot prove consent," the jurors inquired, "does this lack of proof allow us to conclude that a force/threat took place?"[26] This inquiry, we observed, "demonstrated the jury's confusion about the burdens of proof"; it implied that "the jurors had reached the second step of the analysis" and assessed whether the defendant had proven consent by a preponderance *before* they decided whether the government had proven the element of force beyond a reasonable doubt.[27] As the trial court did not dispel the jury's confusion, we found a reasonable likelihood that the jury applied the consent instructions in an unconstitutional manner.[28] The jury could have concluded that the defendant's inability to prove consent by a preponderance of the evidence established that he used force or rendered evidence of consent irrelevant to whether he did so. Either conclusion would have unconstitutionally "eliminat[ed] or alleviat[ed] the government's burden to prove the element of force beyond a reasonable doubt."[29]

In the present case, we do not have a note from the jury revealing such confusion. That does not mean the jury applied the consent defense instruction correctly. Jurors who misunderstand an instruction do not necessarily perceive a need to seek additional guidance from the court.[30] The usual problem with misleading instructions

23. Council of the District of Columbia, Comm. on Pub. Safety and the Judiciary, Report on Bill 18–151, "Omnibus Public Safety and Justice Amendment Act of 2009," at 18 (June 26, 2009).

24. 16 A.3d 944 (D.C.2011).

25. *Id.* at 947.

26. *Id.* at 946–47.

27. *Id.* at 947–48.

28. *Id.* at 948.

29. *Id.* at 947.

30. *Cf. Whitaker v. United States*, 617 A.2d 499, 502 (D.C.1992) ("[T]hat the jurors did not report to the court that they were confused .... can hardly be conclusive.... A group of people (such as a jury) may not realize they are lost, and they may still be lost.").

is precisely that a reviewing court cannot know for sure how the jury understood them.[31] We see no reason the affirmative consent defense instruction would have been less misleading in this case than it was in *Gaynor*. The jurors in this case also could have misunderstood the instruction as meaning Hatch had to prove he did not coerce Ancrum—and thus as reducing the government's burden of persuasion on the element of force. The juxtaposition of the affirmative consent defense instruction with the instruction on Hatch's theory of the defense (that he "never threatened the complaining witness with a gun, never pointed a gun at the complaining witness, and never forced the complaining witness to engage in any sexual activity") may well have increased the likelihood that the jury would mistakenly shift the burden of persuasion with respect to the use of force to the defense. And we cannot say that the *Gaynor* jury's consideration of the affirmative defense before it determined whether the government had proved the elements of the offense was so aberrant that Hatch's jury was unlikely to make the same mistake. On the contrary, the confusing illogic of the affirmative consent

defense instruction encouraged Hatch's jury to proceed as the *Gaynor* jury did.

We do not consider the consent defense instruction in isolation. As was true as well in *Gaynor*, the trial court in its general instructions charged Hatch's jury on the presumption of innocence and the government's burden to prove all the elements of the charged offenses beyond a reasonable doubt. The court reemphasized the government's burden of proof when it instructed on the elements of first-degree sexual abuse, including the element of force.[32] By themselves, however, such instructions are "not necessarily sufficient . . . to overcome other confusing or ambiguous instructions on the burdens of proof."[33] We think they were insufficient in this case. The court never explained how the jury could reconcile the affirmative defense of consent with the government's burden of proving the use of force.[34] Instead, the court perplexingly told the jury it "must consider" whether Ancrum consented even if it initially found the government had established the element of force. And while the court properly told the jury it could consider evidence of consent in deciding whether the

**31.** *See, e.g., Francis v. Franklin*, 471 U.S. 307, 324 n. 8, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985) (stating that where a reasonable likelihood of an unconstitutional understanding exists, "we have no way of knowing that the defendant was not convicted on the basis of the unconstitutional instruction") (internal brackets and quotation marks omitted).

**32.** In a standard formulation, the court also instructed the jury that the government's burden of proving the defendant guilty beyond a reasonable doubt "never shifts throughout the trial," and that "[t]he law does not require the defendant to prove his innocence or to produce any evidence at all." True enough, of course, but a jury not versed in the law might wonder how those principles coexist with the defendant's burden to prove consent by a preponderance of the evidence.

**33.** *Russell v. United States*, 698 A.2d 1007, 1013 (D.C.1997) (citing *Sandstrom v. Montana*, 442 U.S. 510, 518–19 & n. 7, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979)); *see also Gaynor*, 16 A.3d at 948 (general instructions on government's burden held insufficient "to overcome the confusion inherent in applying [D.C.Code § 22–3007] to these circumstances and increased by the supplemental instructions").

**34.** *See Francis*, 471 U.S. at 322, 105 S.Ct. 1965 ("Language that merely contradicts and does not explain a constitutionally infirm instruction will not suffice to absolve the infirmity. A reviewing court has no way of knowing which of the two irreconcilable instructions the jurors applied in reaching their verdict.").

government had met its burden of proving force, it never explicitly warned the jury that the defendant's burden to prove consent by a preponderance of the evidence was irrelevant to that determination.[35]

In sum, on the record before us, we are persuaded there is a reasonable likelihood that the jury applied the affirmative consent defense instruction in an unconstitutional manner, so as to shift the burden of persuasion to the defense on the critical element of force.

### III. Conclusion

For the foregoing reasons, we reverse Hatch's convictions for first-degree sexual abuse and for possession of a firearm during a crime of violence, and remand for a new trial on those counts. We affirm Hatch's convictions for carrying a pistol without a license and possession of an unregistered firearm.

*So ordered.*

KING, Senior Judge, concurring in the result:

While I am unable to agree that Hatch did not interpose a consent defense within the meaning of the applicable statute, I am satisfied, substantially for the reasons set forth in the majority opinion, that there is a reasonable likelihood that the jury applied the affirmative defense instruction in an unconstitutional manner. Accordingly I agree that Hatch's convictions for first-degree sexual abuse and possession of a firearm during a crime of violence should be reversed.

---

**35.** The closing arguments of counsel likewise did not explain how the parties' respective burdens of proof could be reconciled or alert the jury to the danger of burden-shifting.