UNITED STATES, Appellee

v.

Raymond L. NEAL, Aviation Electronics Technician Airman
U.S Navy, Appellant

No. 09-5004

Crim. App. No. 200800746

United States Court of Appeals for the Armed Forces

Argued September 21, 2009

Decided January 22, 2010

EFFRON, C.J., delivered the opinion of the Court, in which BAKER and STUCKY, JJ., joined. RYAN, J., filed a separate opinion concurring in part and dissenting in part, in which ERDMANN, J., joined.

Counsel

For Appellant: Lieutenant Dillon J. Ambrose, JAGC, USN (argued).

For Appellee: Major Elizabeth A. Harvey, USMC (argued); Colonel Louis J. Puleo, USMC, and Brian K. Keller, Esq. (on brief).

Amicus Curiae for the United States Air Force Appellate Government Division: Lieutenant Colonel Jeremy S. Weber, Captain Naomi N. Porterfield, and Gerald R. Bruce, Esq. (on brief).

Military Judge: Mario H. De Oliveira

THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

United States v. Neal, No. 09-5004/NA

Chief Judge EFFRON delivered the opinion of the Court.

The present case concerns a decision by the military judge to dismiss a charge in a pending court-martial. Upon appeal by the Government under Article 62, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 862 (2006), the United States Navy-Marine Corps Court of Criminal Appeals reversed the military judge and remanded the case to the Judge Advocate General of the Navy for further proceedings before the court-martial. United States v. Neal, 67 M.J. 675, 680-82 (N-M. Ct. Crim. App. 2009). The Judge Advocate General of the Navy certified the case for our review under Article 67(a)(2), UCMJ, 10 U.S.C. § 867(a)(2) (2006).

The charge under appeal, aggravated sexual contact in violation of Article 120(e), UCMJ, 10 U.S.C. § 920(e), involves a new offense enacted by Congress in 2006 as part of a comprehensive revision of Article 120. See National Defense Authorization Act for Fiscal Year 2006, Pub. L. No. 109-163, div. A, tit. V, § 552(a)(1), 119 Stat. 3136, 3257 (2006) (codified as amended at 10 U.S.C. § 920 (2006)). The 2006 legislation revised the description of rape under Article 120 and added thirteen other offenses to the statute, including Article 120(e), aggravated sexual contact.

In pertinent part, the new statute makes it an offense to engage in sexual contact by use of force. See infra Part III.A

(describing Article 120(e) and the related provisions of Article
120).  In contrast to prior law, which required the government
to prove lack of consent as an element of the offense, see infra
Part III.A.1, the new statute expressly states that consent is
"not an issue" in a prosecution for specified offenses under
Article 120, including the offense of aggravated sexual contact.
See infra Part III.A.3.b (describing Article 120(r) and the
related provisions of Article 120).

At trial, the military judge interpreted Article 120(e) as
requiring the defense to disprove an implied element -- lack of
consent -- and dismissed the charge on the ground that the
statute unconstitutionally shifted the burden of proof on an
element from the Government to the defense.  On review under
Article 62, the Court of Criminal Appeals concluded that the
statute did not contain an implied element and did not relieve
the Government of its burden to prove all elements beyond a
reasonable doubt.  Neal, 67 M.J. at 680-82.  The Judge Advocate
General of the Navy certified the following issues for our
review:

> I.  WHETHER THE NAVY-MARINE CORPS COURT OF
> CRIMINAL APPEALS ERRED IN FINDING IT HAD
> JURISDICTION OVER THIS ARTICLE 62, UCMJ, APPEAL,
> WHERE THE APPEAL WAS TAKEN AFTER THE CASE WAS
> ADJOURNED AND THE MEMBERS DISMISSED.
>
> II.  DESPITE THE LANGUAGE OF ARTICLE 120(r),
> UCMJ, WHETHER THE NAVY-MARINE CORPS COURT OF
> CRIMINAL APPEALS CORRECTLY HELD THAT THE ARTICLE

DOES NOT PROHIBIT THE ACCUSED FROM INTRODUCING
EVIDENCE OF CONSENT IN ORDER TO NEGATE AN ELEMENT
OF THE OFFENSE.

III.  CONCERNING THE AFFIRMATIVE DEFENSE SET
FORTH IN ARTICLE 120(t)(16), WHETHER THE NAVY-
MARINE CORPS COURT OF CRIMINAL APPEALS CORRECTLY
HELD THAT CONGRESS CONSTITUTIONALLY ALLOCATED, TO
THE ACCUSED, THE BURDEN OF PROVING CONSENT BY A
PREPONDERANCE OF THE EVIDENCE.

IV.  WHETHER THE NAVY-MARINE CORPS COURT OF
CRIMINAL APPEALS CORRECTLY HELD THAT "LACK OF
CONSENT" IS NOT AN IMPLICIT ELEMENT OF ARTICLE
120 CRIMES, INCLUDING THE CHARGED OFFENSE, GIVEN
THE DEFINITION OF "FORCE" IN ARTICLE 120(t)(5),
AND THUS ARTICLE 120, UCMJ, DOES NOT
UNCONSTITUTIONALLY SHIFT THE BURDEN TO THE
ACCUSED TO "DISPROVE AN ELEMENT OF THE OFFENSE."

V.  WHETHER THE NAVY-MARINE CORPS COURT OF
CRIMINAL APPEALS CORRECTLY HELD THAT THE EVIDENCE
TRIGGERED THE AFFIRMATIVE DEFENSE OF CONSENT AS
DEFINED IN ARTICLE 120(t)(16), UCMJ, DESPITE THE
FACT THAT THE APPELLANT FAILED TO ACKNOWLEDGE THE
OBJECTIVE ACTS OF THE ALLEGED OFFENSE.

VI.  WHETHER THE FINAL TWO SENTENCES OF ARTICLE
120(t)(16), UCMJ, WHICH ALLOWS FOR CONSIDERATION
AS TO WHETHER THE GOVERNMENT HAS DISPROVED THE
AFFIRMATIVE DEFENSE OF CONSENT BEYOND A
REASONABLE DOUBT, AFTER THE ACCUSED HAS PROVED
THE DEFENSE BY A PREPONDERANCE OF THE EVIDENCE,
CREATE A LEGALLY IMPOSSIBLE BURDEN ALLOCATION.

For the reasons set forth below, we affirm the decision of
the Court of Criminal Appeals.  Part I summarizes the trial and
intermediate appellate proceedings.  Part II addresses the first
certified issue, which concerns the jurisdiction of the Court of
Criminal Appeals.  Part III addresses the balance of the
certified issues in light of the pertinent constitutional and

statutory considerations regarding Article 120.  Part IV sets

forth our decision.

## I.  BACKGROUND

### A.  TRIAL PROCEEDINGS

### 1.  Appellant's Motion to Dismiss the Charge

The charge in the present case alleges that Appellant --

> engage[d] in sexual contact, to wit:  by
> using his hands to fondle the breasts and
> vaginal area of Airman [_____] and by
> thrusting his penis against the buttocks of
> the said Airman [_____], by using physical
> strength sufficient that she could not
> escape the sexual contact.

Following arraignment, Appellant moved to dismiss the

charge, challenging the constitutionality of the new Article 120

on a number of grounds, including the contention that the

affirmative defense provisions of the statute unconstitutionally

shifted the burden of proof from the Government to Appellant.

See Martin v. Ohio, 480 U.S. 228 (1987).  The military judge

stated that he would not address that question until he

determined whether the evidence raised the affirmative defense

of consent.

After the parties completed presentation of evidence on

the merits, the military judge summarized the evidence pertinent

to the issue of consent.  He briefly noted that Airman [_____]

testified that Appellant had engaged in the charged conduct

without her permission.  The military judge provided a more

detailed summary, as follows, regarding Appellant's testimony

concerning his physical interaction with Airman [_____]:

1. Pg 852 (transcript). AN Neal indicated that the alleged victim consented to a back and neck rub due to a back injury she had previously sustained.

2. Pg 854 After 20-30 minutes of rubbing the alleged victim's back, she reached up with her right hand and interlocked her fingers with his left hand and pulled herself up onto him. After having her back against his chest, he asked if she still wanted him to continue massaging her back.

3. She did not respond to his question, shook her head "no" and while biting her lip thrust her hips towards his pelvic area. As she continued to grind against him, he "got caught up in the moment" and reciprocated by grinding up against her.

4. Pg 856 (transcript) He moved his right hand around the front of her stomach along her belt line and then moved it down against the inside of her thingh [sic] and started touching her around her vaginal area on the outside of her jeans.

5. At one point he unbuckled her belt, as he did this she pivoted her hips and raised them off the bed towards his hand. Her pantns [sic] and brazier [sic] were never unfastened.

6. Pg 857 (transcript) After unfastening her belt, he stuck his hand down until he touched the waistband of her underwear. As he started to insert his hand down in the front of her jeans, [another Airman in the room] woke up and began to sit up. Then AR [_____] leaned towards him and wispered [sic], "I think we should stop now." He immediately withdrew his hand and leaned up against the headboard, she did the same and turned on the T.V.

The military judge determined that the affirmative defense of consent had been raised by Appellant's description of the physical contact and his description of the alleged victim's response. The military judge interpreted the statute as requiring the prosecution to prove lack of consent by the victim. In that light, the military judge viewed the affirmative defense of consent under the statute as "element based" and concluded that the statute unconstitutionally required the defense to carry the burden of proof with respect to an element of the offense. On that basis, he dismissed the charge and its specification.

2. Proceedings Following Dismissal of the Charge

The members of the court-martial panel remained outside the courtroom during the proceedings on the motion to dismiss the charge. See Article 39(a), UCMJ, 10 U.S.C. § 839(a) (2000). Immediately following the military judge's ruling, he directed the bailiff to recall the panel, and the members entered the courtroom at 10:23 a.m. After informing the members that he had dismissed the charge and its specification, he said:

> You have now completed your duties, and are discharged with my sincerest thanks. Please leave all the exhibits behind, if you have any in your possession. You may take your own personal notes with you, or leave those behind, and they will be destroyed by the court reporter or bailiff.

<u>United States v. Neal</u>, No. 09-5004/NA

With respect to discussing the case, the military

judge said:

> To assist you in determining what you may discuss
> about this case, now that it is over, the
> following guidance is provided.  When you took
> your oath as members, you swore not to disclose
> or discover the vote or opinion of any particular
> member of this court, unless required to do so in
> the due course of law.

The military judge notified the members of the possibility that

he, or another military judge, might require them to state their

views in court:

> This means you may not tell anyone any way --
> well how you voted in this case wouldn't be
> appropriate, but what your opinion is, unless I,
> or another judge, require you to do so in court.

He then discussed the opportunity to provide counsel with

feedback:

> You are each entitled to this privacy.  Other
> than that, you are free to talk to anyone else in
> this case, including myself, the attorneys, or
> anyone else.  And I'm sure counsel in this case
> would very much appreciate any feedback that you
> have on their advocacy and performance in court.
> That's one of the great ways that we can have our
> counsel improve on their trial advocacy.

> You, however, can decline to participate in such
> discussions, if that is your choice.

The military judge concluded with the following:

> Members, once again, I want to thank you
> sincerely for your participation and patience in
> this case.  You've been a very attentive panel.
> I appreciate your patience during all our 39(a)
> sessions, and you may depart the courtroom and
> resume your normal duties.

Thank you very much.

The members withdrew from the courtroom, and at 10:27 a.m. the military judge stated:  "This court-martial is adjourned."

A day later, the trial counsel filed notice that the Government had elected to appeal the ruling dismissing the charge.  See Article 62(a)(1)(A), UCMJ, 10 U.S.C. § 862(a)(1)(A) (2006) (authorizing the Government to appeal an "order or ruling of the military judge which terminates the proceedings with respect to a charge or specification").  Subsequently, the Government filed its appeal of the military judge's ruling at the Court of Criminal Appeals.

3.  Review by the Court of Criminal Appeals

The Court of Criminal Appeals conducted an en banc review of the Government's interlocutory appeal.  See Article 66(a), UCMJ, 10 U.S.C. § 866(a) (2006).  Following briefing and oral argument, the court granted the Government's interlocutory appeal.  Neal, 67 M.J. at 682.  At the outset of its opinion, the court considered, and rejected, Appellant's contention that the Government waived the right to appeal by not requesting a delay before the military judge took action to dismiss the charge and discharge the members.  Id. at 677; see infra Part II (discussing the jurisdiction of the Court of Criminal Appeals in the present case).

United States v. Neal, No. 09-5004/NA

The lower court then addressed the merits of the military judge's ruling on the constitutionality of the statute, concluding that the military judge erred by dismissing the charge.  The court concluded that "in this aggravated sexual contact prosecution, proof of the element of force does not require proof of 'lack of consent,' and the affirmative defense of consent does not unconstitutionally shift the burden of proof to the defense."  Neal, 67 M.J. at 682; see infra Part III (discussing the merits of the decision by the military judge to dismiss the charge of aggravated sexual contact).

## II.  JURISDICTION OF THE COURT OF CRIMINAL APPEALS
### (Certified Issue I)

The first certified issue concerns the lower court's jurisdiction over the Government's appeal.  We review jurisdictional questions de novo.  See United States v. Henderson, 59 M.J. 350, 351-52 (C.A.A.F. 2004).  Appellant asserts that the Government waived its right to appeal by not requesting a delay in the proceedings under Rule for Courts-Martial (R.C.M.) 908.  Appellant also argues that the court-martial ceased to exist because the military judge adjourned the court and discharged the members.  According to Appellant, the military judge's ruling is not subject to a Government appeal

under these circumstances because the case has become final, thereby precluding interlocutory review.

The Court of Criminal Appeals held that "[t]he military judge's statement to the members that they were 'discharged' following 'termination of the proceedings' does not deprive this court of jurisdiction to determine this Government's appeal." Neal, 67 M.J. at 677. The court also "decline[d] to address the legal efficacy of potential future proceedings as not ripe for review." Id. We agree.

### A. THE NOTICE OF APPEAL UNDER ARTICLE 62

Article 62(a)(1)(A) governs interlocutory government appeals "[i]n a trial by court-martial in which a military judge presides and in which a punitive discharge may be adjudged . . . ." The statute includes authority for the government to appeal an "order or ruling of the military judge which terminates the proceedings with respect to a charge or specification." Id.

The statute contains a notice requirement accompanied by a timing limitation: "An appeal of an order or ruling may not be taken unless the trial counsel provides the military judge with written notice of appeal from the order or ruling within 72 hours of the order or ruling." Article 62(a)(2), UCMJ.

R.C.M. 908(b)(1) provides additional authority for the prosecution to request a delay in trial proceedings during the seventy-two hour period for filing an appeal:

11

> After an order or ruling which may be subject to an appeal by the United States, the court-martial may not proceed, except as to matters unaffected by the ruling or order, if the trial counsel requests a delay to determine whether to file notice of appeal under this rule. Trial counsel is entitled to no more than 72 hours under this subsection.

Appellant contends that R.C.M. 908(b)(1) reduces the statutory seventy-two hour period provided under Article 62 for the Government to file a notice of appeal. Under Appellant's theory, R.C.M. 908(b)(1) requires the Government to request a delay as soon as the military judge issues a ruling in order to preserve the seventy-two hour period for filing a notice of appeal. According to Appellant, the prosecution waived the statutory seventy-two hour period by not making a formal request for delay during the few minutes that transpired between issuance of the military judge's ruling and the adjournment of the court-martial.

Neither the statute nor the rule requires the prosecution to take any such action. The statute provides the prosecution with an unqualified seventy-two hour period in which to file a notice of appeal. R.C.M. 908(b)(1) does not diminish that time period or otherwise condition the availability of the full seventy-two hour period upon filing a request for delay. The rule, which addresses the flow of court-martial proceedings, provides that certain aspects of the proceedings will be stayed

12

during the seventy-two hour period "if" trial counsel requests a delay. In the absence of such a request, the proceedings will continue. As such, the rule offers trial counsel an opportunity to delay the proceedings during the seventy-two hour period if the prosecution wishes to preserve the status quo with respect to matters affected by the ruling or order. As noted in the Drafters' Analysis, the rule "provides the trial counsel with a mechanism to ensure that further proceedings do not make an issue moot before the Government can file notice of appeal." Manual for Courts-Martial, United States, Analysis of the Rules for Courts-Martial app. 21 at A21-58 (2008 ed.) (MCM).

In the present case, the trial counsel filed a notice of appeal within twenty-four hours of the military judge's ruling. The absence of a request for delay did not waive the prosecution's right to do so.

## B.   STATUS OF THE COURT-MARTIAL PANEL

In a related argument, Appellant contends that the prosecution's failure to request a delay made it possible for the military judge to discharge the members. Appellant further contends that once the military judge discharged the members, the court-martial ceased to exist and the military judge's ruling on the charges became final. In Appellant's view, the proceedings were thereby terminated, thus precluding an interlocutory appeal under Article 62.

13

We do not agree with Appellant's view of the procedural posture of this case. In the military justice system, the authority of the military judge in a court-martial does not cease upon the discharge of the members. The military judge retains control over a court-martial until the record is authenticated and forwarded to the convening authority for review. See R.C.M. 1104. Until this point, even after discharge of the members and adjournment of the court-martial, the military judge may take actions such as: reconsidering rulings, R.C.M. 905(f); reconvening the court-martial to correct an erroneous sentence announcement, R.C.M. 1007(b); calling a session to clarify an ambiguous sentence imposed by either the military judge or the members, R.C.M. 1009(c); and directing post-trial sessions, R.C.M. 1102. These authorities illustrate that a court-martial does not cease to exist upon discharge of the members, and a case remains in an interlocutory posture so long as the military judge has the power to take action under the UCMJ and Rules for Courts-Martial.

C. POTENTIAL DISQUALIFICATION OF THE MEMBERS

Appellant also contends that the court-martial has become final because the action of the military judge in permitting the panel members to discuss the case with counsel precludes further proceedings. At this stage of the proceedings, a determination as to the effect of the military judge's actions upon the

14

proceedings would be premature.  The defense has filed an affidavit regarding events following discharge of the members, but there has been no authoritative factfinding proceeding to ascertain what actually transpired.  The information regarding discussions between counsel and members comes from an appellate affidavit signed by trial defense counsel.  The members themselves have not submitted affidavits, nor have they been questioned.  On this record, it would be inappropriate at this point of the proceedings to conclude that some or all of the members have been disqualified.  Even assuming that one or all of the members should be disqualified, the military judge would then have the opportunity to consider whether such members may be replaced under R.C.M. 505(c).  To the extent that excusal of members might lead to motions raising mistrial or potential former jeopardy concerns, those matters should be considered in light of briefing by the parties before the military judge and any factfinding that the military judge might find necessary.  Excusal of members is a standard procedure in a court-martial, and the possibility of excusal and related concerns does not transform the status of a court-martial from an interlocutory to a final proceeding.  At the present time, the military judge has not had the opportunity to engage in factfinding, or to consider any related issues concerning replacement, mistrial, or former jeopardy.  See R.C.M. 505, 905, 907(b)(2)(C).

To the extent that Appellant relies on cases from civilian trials in which a declaration of a mistrial followed by discharge of a jury has been held to terminate the proceedings, see, e.g., Camden v. Circuit Court of the Second Judicial Circuit, 892 F.2d 610, 616 n.7 (7th Cir. 1989), we note that there has been no declaration of a mistrial in the present case. We further note that this case remains in an interlocutory posture and that discharge of the panel members does not necessarily preclude reassembly. Accordingly, we conclude with respect to the first certified issue that the Court of Criminal Appeals had jurisdiction to review the Government's appeal of the military judge's decision to dismiss the charge. The remaining certified issues, which we discuss in the next section, involve matters of constitutional and statutory interpretation pertaining to the burden of proof under the new Article 120.

III. CONSTITUTIONAL AND STATUTORY CONSIDERATIONS

The defense brief provides the following concise description of the issue before us: "Appellant alleges, and the trial judge found, that the statutory scheme set forth in Article 120, UCMJ, violates due process by necessarily placing a burden on the defense to disprove an element of the Government's case." In this section, we assess the military judge's ruling

16

in light of the statutory text and applicable constitutional considerations.  The constitutionality of a statute is a question of law we review de novo.  United States v. Disney, 62 M.J. 46, 48 (C.A.A.F. 2005).

Part A summarizes the statutory context of the new Article 120, focusing on the offense at issue in the present appeal -- aggravated sexual contact under Article 120(e).  Part B provides background on the constitutional considerations applicable to the relationship between the elements of an offense and affirmative defenses.  Parts C, D, and E discuss these considerations in light of the constitutional and statutory interpretation issues regarding the new Article 120 raised by the present appeal.

A.  STATUTORY CONTEXT

1.  Sexual Misconduct Under Prior Law

Congress enacted the offense of aggravated sexual contact in 2006 in the course of amending Article 120.  See infra Part III.A.2.  Under prior law, the offense of rape required proof that the accused committed "an act of sexual intercourse by force and without consent."  See Article 120, UCMJ, 10 U.S.C. § 920 (2000) (amended in 2006).  Many other forms of sexual misconduct were charged under prior law as conduct prejudicial to good order and discipline or as service discrediting conduct under Article 134, UCMJ, 10 U.S.C. § 934 (2000).  For example,

the alleged misconduct in the present case might have been charged under prior law as an indecent assault under Article 134. MCM pt. IV, paras. 63 (2005 ed.). With respect to the assault element of that offense, the government would have been required to prove that the accused acted "without the lawful consent of the person affected." Id. paras. 63.b(1), 63.c., 54.c(1)(a).

2. Aggravated Sexual Contact Under the New Article 120

Article 120(e) states:

Any person subject to this chapter who engages in or causes sexual contact with or by another person, if to do so would violate subsection (a) (rape) had the sexual contact been a sexual act, is guilty of aggravated sexual contact, and may be punished as a court-martial may direct.

By its terms, the offense of aggravated sexual contact incorporates statutory provisions governing the offense of rape under Article 120(a). The definitions in Article 120(t) govern the terms of Article 120(a) and the incorporated provisions of Article 120(e). Under the statute, the elements of rape, along with the definitions of force and sexual contact, transform non-criminal sexual contact into a criminal offense -- aggravated sexual contact by force. Taken as a whole, these provisions require the government to prove the following in a prosecution for aggravated sexual contact by force:

(1)  The accused engaged in "sexual contact" with another person by touching "the genitalia, anus, groin, breast, inner thigh, or buttocks of the other person."  Articles 120(e), 120(t)(2), UCMJ.

(2)  The accused engaged in such contact "with an intent to abuse, humiliate, or degrade any person or to arouse or gratify the sexual desire of any person."  Article 120(t)(2), UCMJ.

(3)  The accused "caus[ed] another person of any age to engage in" such contact by "using force against that other person." Articles 120(a)(1), 120(a)(2), UCMJ.

(4)  The use of force consisted of "action to compel submission of another" or "to overcome or prevent another's resistance," and the use of force involved application of "physical . . . strength . . . sufficient that the other person could not avoid or escape the sexual conduct."  Article 120(t)(5), UCMJ.

3.  Consent Under the New Article 120

     The amendment to Article 120 deleted the phrase "without consent" from the statute.  The new Article 120 addresses the subject of consent in several respects.

     a.  The definition of consent

     The definition of consent in Article 120(t)(14) contains three components.  The first explains the meaning of "consent" under Article 120:

> The term "consent" means words or overt acts
> indicating a freely given agreement to the sexual
> conduct at issue by a competent person.

The second component of the definition identifies several circumstances excluded from the definition of consent:

> An expression of lack of consent through words or
> conduct means there is no consent.  Lack of
> verbal or physical resistance or submission
> resulting from the accused's use of force, threat
> of force, or placing another person in fear does
> not constitute consent.  A current or previous
> dating relationship by itself or the manner of
> dress of the person involved with the accused in
> the sexual conduct at issue shall not constitute
> consent.

The third component of the definition, which is not at issue in the present appeal, identifies circumstances in which an individual cannot give consent under Article 120, including persons under sixteen years of age and persons "substantially incapable" of "appraising the nature of the sexual conduct at issue" because of specified mental or physical circumstances.

The term "mistake of fact as to consent" also is a defined term.  See Article 120(t)(15), UCMJ.  Mistake of fact is not at issue in the present appeal.

b.  Consent as an affirmative defense

Article 120(r), entitled "Consent and Mistake of Fact as to Consent," sets forth three principles regarding consent.  First, the provision states:  "Lack of permission is an element of the offense in subsection (m) (wrongful sexual contact)" -- an

offense that is not at issue in the present appeal.  Second,

Article 120(r) sets forth the general proposition that

"[c]onsent and mistake of fact as to consent are not an issue,

or an affirmative defense, in a prosecution under any other

subsection . . . ."  Third, the provision contains an exception

pertinent to the present case, noting that consent and mistake

of fact as to consent "are an affirmative defense for the sexual

conduct in issue in a prosecution under subsection (a) (rape),

subsection (c) (aggravated sexual assault), subsection (e)

(aggravated sexual contact), and subsection (h) (abusive sexual

contact)."

    c.  The definition of "affirmative defense"

    The definition of "affirmative defense" in Article

120(t)(16) contains both descriptive and procedural components.

The descriptive portion states that an "affirmative defense" is

"any special defense which, although not denying that the

accused committed the objective acts constituting the offense

charged, denies, wholly, or partially, criminal responsibility

for those acts."

    The procedural component contains two parts.  The first

states:  "The accused has the burden of proving the affirmative

defense by a preponderance of the evidence."  The second states:

"After the defense meets this burden, the prosecution shall have

the burden of proving beyond a reasonable doubt that the affirmative defense did not exist."

B.   THE ALLOCATION OF BURDENS OF PROOF WHEN EVIDENCE IMPLICATES AN ELEMENT OF THE OFFENSE AND AN AFFIRMATIVE DEFENSE

The Due Process Clause of the Constitution, U.S. Const. amend. V, protects a defendant from conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  In re Winship, 397 U.S. 358, 364 (1970); see R.C.M. 920(e)(5).  The Constitution precludes shifting the burden of proof from the government to the defense "with respect to a fact which the State deems so important that it must be either proved or presumed" in order to constitute a crime.  Patterson v. New York, 432 U.S. 197, 215 (1977).

A legislature may redefine the elements of an offense and require the defense to bear the burden of proving an affirmative defense, subject to due process restrictions on impermissible presumptions of guilt.  Id. at 205-06, 210, 215.  A statute may place the burden on the accused to establish an affirmative defense even when the evidence pertinent to an affirmative defense also may raise a reasonable doubt about an element of the offense.  See Martin, 480 U.S. at 234.

In Martin, the Supreme Court observed that its review of the statute took into account "the preeminent role of the States

22

in preventing and dealing with crime." Id. at 232. Martin also noted "the reluctance of the Court to disturb a State's decision with respect to the definition of criminal conduct and the procedures by which the criminal laws are to be enforced in the courts, including the burden of producing evidence and allocating the burden of persuasion." Id. An overlap between the evidence pertinent to the affirmative defense and evidence negating the prosecution's case does not violate the Due Process Clause when instructions "convey to the jury that all of the evidence, including the evidence going to [the affirmative defense], must be considered in deciding whether there was a reasonable doubt about the sufficiency of the State's proof of the elements of the crime." Id. at 232-36.

Appellate courts have addressed the overlap identified in Martin with respect to statutes under which evidence at trial potentially pertains to both (1) a fact on which the defense bears the burden of persuasion, and (2) a matter that is subsidiary to a fact on which the prosecution bears the burden of persuasion. In such a case, the instructions to the jury must reflect "sensitivity to th[e] dependent relationship between the two [distinct] factual issues." Humanik v. Beyer, 871 F.2d 432, 441 (3d Cir. 1989).

In Humanik, the United States Court of Appeals for the Third Circuit considered instructions under state law regarding

evidence of a mental disease or defect.  Id. at 433.  Under the instructions, the evidence could be considered by the jury:  (1) to determine whether the defense proved the existence of mental disease or defect by a preponderance of the evidence for purposes of establishing a defense; and (2) as subsidiary evidence with respect to the element of intent, an issue on which the prosecution bore the burden of proof beyond a reasonable doubt.  Id. at 435.  The court found a due process violation in the sequential structure of the instructions.  Id. at 442.  The court noted the likelihood that the jury would first determine the issue of whether the defendant established the fact of mental disease or defect by a preponderance of the evidence.  Id.  If the jury determined that the defendant failed to establish this fact by a preponderance of the evidence, the court concluded that the evidence would play no role in the jury's deliberations with respect to the issue of intent, a matter on which the state had the burden of proof beyond a reasonable doubt.  Id.  As such, the court viewed the instructions as an unconstitutional filter upon consideration of evidence pertinent to an element of the offense.  Id. at 443; accord Kontakis v. Beyer, 19 F.3d 110, 115 (3d Cir. 1994) (finding a due process violation in instructions that "failed to allow for the possibility that [the defendant's] mental disease and defect evidence, although not rising to the level of being

more probable than not, created a reasonable doubt as to whether he had the requisite intent to commit the offense").

In Russell v. United States, 698 A.2d 1007 (D.C. 1997), the District of Columbia Court of Appeals considered a sexual misconduct statute with an affirmative defense component. Id. at 1008. In language similar to the statute under consideration in the present appeal, the legislation under review in Russell made it an offense for a person to engage in or cause another person to engage in a sexual act through various means, including the use of force. See id. at 1009. The legislation also created an affirmative defense of consent, with the defense bearing the burden of persuasion by a preponderance of the evidence. Id. The court identified a critical change in the focus of attention in sexual misconduct cases under the statute:

> The new sexual abuse statute . . . was intended to change the focus of the criminal process away from an inquiry into the state of mind or acts of the victim to an inquiry into the conduct of the accused. To this end, the new provisions do not include "lack of consent" as an element of the offense.

Id.

The defendant in Russell objected at trial to the statutory provision under which he bore the burden of proof on the affirmative defense, and he also objected to the instructions given by the trial judge regarding consent and the burden of proof. Id. at 1010. On appeal, the District of Columbia Court

25

of Appeals held that the instruction was defective because the jury was not "expressly instructed that it may consider the affirmative defense evidence when it determines whether the government has met its burden to prove all the elements of the offense beyond a reasonable doubt." Id. at 1015-16 (citing Humanik, 871 F.2d 432).

Although the Court of Appeals found a constitutional deficiency in the instruction, the court rejected a defense challenge to the constitutionality of the statute and remanded the case for retrial. Id. at 1016-17. The court concluded that the statutory affirmative defense, which placed upon the defense the burden of proving consent by a preponderance of the evidence, did not offend the due process clause under Martin. Id. After noting that "the legislature did not exclude consent evidence as relevant to the government's burden of proof on the elements of the offense," id. at 1016, the court concluded that the statute did not "preclude the jury from considering the defendant's consent evidence as relevant to the government's burden to prove the elements of the offense." Id. at 1017. The court also noted with approval "the fact that the affirmative defense of consent focuses on something within the knowledge of the accused that he may fairly be required to prove -- that the words or overt actions of the complainant reasonably indicated that the complainant freely agreed to engage in the sexual act."

Id.; see also Hicks v. United States, 707 A.2d 1301, 1303-05 (D.C. 1998) (remanding a case for further proceedings in light of an instructional error regarding the burden of proof); Mozee v. United States, 963 A.2d 151, 161 (D.C. 2009) (affirming a conviction under the statute on the grounds that an instructional defect in the case with regard to the burden of proof did not affect the appellant's substantial rights under a plain error analysis).

Under Russell, the opportunity for a jury to consider evidence that may raise a reasonable doubt about an element does not shift the burden to the defense to disprove that element. The burden of proof as to all elements remains on the prosecution.  A properly instructed jury may consider evidence of consent at two different levels:  (1) as raising a reasonable doubt as to whether the prosecution has met its burden on the element of force; and (2) as to whether the defense has established an affirmative defense.  As such, the statute does not offend the Due Process Clause under Martin.

### C.   CONSENT UNDER ARTICLE 120

1.   The relationship between consent and the facts necessary to constitute a crime under Article 120(e)

The 2006 amendment to Article 120 removed lack of consent as an element of rape and its related offenses.  See supra Part

27

III.A.  The text of Article 120(e) and the incorporated provisions of Articles 120(a) and 120(t) do not set forth lack of consent as an element of the offense.  See id.  The Supreme Court has "observed that '[t]he definition of the elements of criminal offense is entrusted to the legislature, particularly in the case of federal crimes, which are solely creatures of statute.'"  Dixon v. United States, 548 U.S. 1, 7 (2006) (alteration in original) (quoting Liparota v. United States, 471 U.S. 419, 424 (1985)).  Congress has broad authority to define the elements of offenses under the constitutional power to make rules for the government and regulation of the armed forces. U.S. Const. art. 1, § 8, cl.14; see Parker v. Levy, 417 U.S. 733, 750 (1974); see also Weiss v. United States, 510 U.S. 163, 177 (1994).

When sexual abuse by members of the armed forces occurs within a military organization, it can have a devastating impact on the good order and discipline essential to the conduct of military operations.  When sexual abuse by deployed military personnel involves civilians, it can undermine relationships with the local population critical to our Nation's military and foreign policy objectives.  These factors illustrate the importance of recognizing the broad authority of Congress to regulate the conduct of military personnel.  That authority includes the power to define rape and its related offenses in a

manner that does not require proof on the subject of consent, notwithstanding the traditional requirement in military and civilian law for such proof.

Aside from any unique considerations applicable to legislation governing the rights and responsibilities of military personnel, we note that the statute before us reflects similar legislation in the civilian sector. As discussed in Part III.B, supra, the District of Columbia has enacted a similar statute. With respect to that legislation, the District of Columbia Court of Appeals observed that the statute "was intended . . . to change the focus of the criminal process away from an inquiry into the state of mind or acts of the victim to an inquiry into the conduct of the accused." Russell, 698 A.2d at 1009.

Under Article 120(e), as under the District of Columbia statute, the prosecution need not prove the absence of consent in order to obtain a conviction. If the court-martial panel, like a civilian jury, is convinced beyond a reasonable doubt by competent evidence -- such as the testimony of an eyewitness -- that the accused engaged in sexual contact by applying the degree of force described in Article 120(e), then the panel may return a finding of guilty as to aggravated sexual contact. In short, under the structure of the amended statute, the absence of consent is not a fact necessary to prove the crime of

29

aggravated sexual contact under Article 120(e). See Neal, 67 M.J. at 678.

2.    Consent as a potential subsidiary fact under Article 120(e)

As the District of Columbia Court of Appeals observed in Russell, 698 A.2d at 1013, evidence that the alleged victim consented to the charged sexual contact is relevant to the jury's determination of whether the prosecution has proved the element of force beyond a reasonable doubt. The court further held that failure to provide appropriate instructions on the relevance of consent violates the Due Process Clause of the Constitution. Id. at 1016.

In Article 120(r), Congress stated that consent is not "an issue . . . in a prosecution under" designated provisions of Article 120, including Article 120(e). The phrase "an issue" in Article 120(r) is susceptible to a number of interpretations, including a broad and narrow view. Read broadly, the phrase "an issue" could be interpreted as providing that consent is never "at issue" or "in issue" in a prosecution under Article 120 except when the defense meets its burden of persuasion to establish an affirmative defense. Such a reading would raise a substantial conflict with the Supreme Court's application of the Due Process Clause in Martin because it would preclude consideration of consent evidence as a potential subsidiary fact with respect to an element of the offense. See supra Part

30

III.B.  Read narrowly, however, the provision could be interpreted as providing that consent is not "an issue" -- a discrete matter -- that must be proved beyond a reasonable doubt as an element of the offense.  In that regard, we note that the statute refers to when consent is "an issue" and does not state that consent is never "in issue" or "at issue" except as an affirmative defense.  As such, the statement in the legislation that consent is not "an issue" may be interpreted narrowly as emphasizing that consent is not an element, thereby underscoring and reinforcing the legislation's deletion of the prior requirement that the prosecution prove beyond a reasonable doubt that the accused acted "without consent" from the alleged victim.  Under the narrow interpretation, the provision would not preclude treating evidence of consent as a subsidiary fact potentially relevant to a broader issue in the case, such as the element of force.  That interpretation, which would not conflict with Martin, also would be consistent with Russell, under which evidence of a subsidiary fact may be considered as bearing upon the prosecution's burden to prove the element of force.

We decline to adopt a broad interpretation that would raise a direct conflict with Martin, a Supreme Court decision applicable to criminal proceedings, when a narrow interpretation can avoid such a conflict.  See 2A Norman J. Singer & J. D. Shambie Singer, Sutherland Statutes and Statutory Construction §

45:11 (7th ed. 2008).  We interpret Article 120(r) narrowly as underscoring and reinforcing the effect of the 2006 legislation in terms of deleting the prior requirement for the prosecution to prove the absence of consent beyond a reasonable doubt.  We do not interpret Article 120(r) as a prohibition against considering evidence of consent, if introduced, as a subsidiary fact pertinent to the prosecution's burden to prove the element of force beyond a reasonable doubt.

D.  CONSIDERATION OF CERTIFIED ISSUES II-VI

The issues certified by the Judge Advocate General refer to the decision of the Court of Criminal Appeals, but in substance the certified issues address the ruling of the military judge on the constitutionality of Article 120.  In that light, we focus on the ruling issued by the military judge.  See United States v. Shelton, 64 M.J. 32, 37 (C.A.A.F. 2006).

1.  The limited scope of interlocutory review

In considering the certified issues, we note the limitations on the scope of our review imposed by the interlocutory posture of the present appeal under Article 62, UCMJ.  At the present stage of the proceedings, the parties have not made closing arguments on the merits of the charged offense; the military judge has not issued final instructions; the parties have not waived any instructions; and the members have not returned findings on the charged offense.  In that setting,

our review is limited to those matters necessary to assess the military judge's decision to dismiss the charge. Other portions of the military judge's ruling, such as the military judge's rationale for rejecting various aspects of the defense motion to dismiss, may provide useful context but are not before us for decision during interlocutory review.

2. <u>The constitutionality of the affirmative defense (Certified Issue IV)</u>

Appellant contends that the military judge correctly dismissed the charge because lack of consent is an "implicit element" in the offense of aggravated sexual contact. Appellant bases this theory on the definition of force in Article 120(t)(5), which, in the context of the charge in the present case, requires proof that the accused used "action to compel submission of another or to overcome or prevent another's resistance" by "strength . . . applied to another person." According to Appellant:

> If someone is compelled to submit, by definition they are not willing participants in the action, and therefore a "lack of consent" is implicit. Likewise, the same can be said for someone whose resistance is overcome or prevented. Both of these concepts assume resistance, which is an active attempt to prevent something from happening. One does not submit if willing, one need not be overcome if willing, and one does not resist that which one wants. Proving the compelled submission, or the overcome or prevented resistance, the Government is thus burdened with showing these acts were not "freely

given agreement[s]," Article 120(t)(14), i.e., it
was done with a "lack of consent."

Appellant's contention suggests that Congress engaged in a
futile act in passing legislation that deleted the phrase
"without consent" from Article 120 and listed the offenses in
which consent is not "an issue." In Appellant's view, these
actions had no effect because the statutory definition of force
reinserted "without consent" as an "implicit element" in the
statute. From Appellant's perspective, the primary focus of the
statute is not on the force applied by the accused but on the
mental state of the alleged victim, requiring the prosecution to
prove that the alleged victim was "someone" who was "not
willing."

We disagree. Like the statute considered by the District
of Columbia Court of Appeals in Russell, Article 120 focuses on
the force applied by an accused, not on the mental state of the
alleged victim. See supra Parts III.B-III.C. The statute
describes the prohibited act in terms of the degree of force
applied to the alleged victim by the accused. Although the
statute describes the degree of force in terms of the relative
actions of the accused and the alleged victim, the prosecution
is not required to prove whether the alleged victim was, in
fact, willing or "not willing." If the evidence demonstrates
that the degree of force applied by an accused constitutes

34

"action to compel" another person, the statute does not require further proof that the alleged victim, in fact, did not consent. See supra Part III.A.2.  Congress, in defining force from the perspective of the action taken by the alleged perpetrator, did not reinsert "without consent" as an "implicit element" in Article 120.  The possibility that evidence pertinent to the affirmative defense of consent could raise a reasonable doubt about the element of force in a particular case does not render the statute unconstitutional.  See Martin, 480 U.S. at 234. With respect to Issue IV, as certified by the Judge Advocate General of the Navy, we conclude that the military judge erred in treating lack of consent as an element of the offense and in concluding that Congress established an unconstitutional element-based affirmative defense in Article 120.

3.  Consideration of consent evidence under Article 120(e)
    (Certified Issues II and III)

Issues II and III raise questions about treatment of consent evidence under Article 120, both with respect to the prosecution's burden of proving its case beyond a reasonable doubt and the defense burden of proving an affirmative defense by a preponderance of the evidence.  The military judge considered both aspects of consent evidence in addressing the motion to dismiss the charge.

As discussed in Part III.C, supra, the statute does not preclude consideration of consent evidence by a court-martial panel when determining whether the prosecution has proven the elements of the offense beyond a reasonable doubt, and it permits consideration of such evidence with respect to the affirmative defense of consent.  If such evidence is introduced, the military judge must instruct the members to consider all of the evidence, including the evidence of consent, when determining whether the government has proven guilt beyond a reasonable doubt.  See Martin, 480 U.S. at 232-36.  In doing so, the military judge must be mindful of both the content and sequential structure of the instructions.  See Russell, 698 A.2d 1015-16; Humanik, 871 F.2d at 441-43.

We note that the present appeal does not involve a challenge to a ruling of the military judge regarding the admissibility of consent evidence, nor does it involve a challenge to the argument of counsel with respect to such evidence.  In light of the interlocutory posture of this case, no panel instructions regarding consent evidence have been given or waived.  Until the military judge has addressed both the content and sequence of instructions, a determination as to whether the statute is unconstitutional as applied to Appellant would be premature.

4.  Evidence concerning the affirmative defense of consent
    (Certified Issue V)

Certified Issue V asks whether the lower court erred in treating the evidence of record as sufficient to invoke the affirmative defense under Article 120.  The military judge treated the evidence of record as sufficient to invoke the affirmative defense for purposes of ruling on the motion to dismiss the charge.  We view treatment of the evidence by the Court of Criminal Appeals in the same light.  None of the decisions in the present case, including our own, constitute a final decision regarding the evidence in this case, including any evidence subject to consideration as evidence of consent. At this stage in the proceedings, as noted earlier, no instructions have been waived or given with respect to any matter asserted to be evidence of consent.  As the content and sequence of the military judge's instructions are necessary to determine the proper consideration of any consent evidence, see Humanik, 871 F.2d at 441-43, it would be premature at this point to address the manner in which the military judge should treat any evidence of consent in the present case.

5.  The burdens of proof regarding affirmative defenses under
    Article 120(t)(16) (Certified Issue VI)

Certified Issue VI concerns the procedural aspects of Article 120(t)(16) in terms of the relationship between the burdens of the prosecution and defense with respect to an

affirmative defense.  In the course of denying that portion of the defense motion concerning the relative burdens of the parties, the military judge identified interpretative considerations and concluded that those matters could be addressed through appropriate instructions without dismissing the charge.  He did not rely upon that ruling as a basis for his separate decision to dismiss the charge.  The scope of our review in the present case under Article 62 is limited to the military judge's ruling dismissing the charge.  We note that our decision in the present case does not preclude the parties from requesting that the military judge give fresh consideration to the question of whether the relative procedural burdens under Article 120(t)(16) raise interpretative issues that should be addressed through instructions or other appropriate remedies.

### E.  CONCLUSION

In summary, the Constitution permits a legislature to place the burden on the defendant to establish an affirmative defense, even if the evidence necessary to prove the defense also may raise a reasonable doubt about an element of the offense.  See Martin, 480 U.S. at 234; supra Part III.B.  If such evidence is presented, the judge must ensure that the factfinder is instructed to consider all of the evidence, including the evidence raised by the defendant that is pertinent to the affirmative defense, when determining whether the prosecution

established guilt beyond a reasonable doubt. See Martin, 480 U.S. at 232-36; Humanik, 871 F.2d at 441-43; Russell, 698 A.2d at 1015-16; supra Part III.B.

Congress has broad authority to regulate the conduct of members of the armed forces, including the power to define the elements of offenses committed by servicemembers. Supra Part III.C.1. Under the statute before us, the element of force establishes the crime of aggravated sexual contact without including "lack of consent" as an additional element. Supra Parts III.C.1, D.2. Under the statutory framework set up by Congress, the prosecution may obtain a conviction upon a showing that the accused applied a certain amount of force and need not provide any evidence regarding the victim's state of mind. Supra Parts III.C.1., D.2. If evidence of consent is introduced, it may raise a reasonable doubt about the government's proof on the element of force. As such, the evidence of consent would be relevant to the determination of whether the government has proven the required elements beyond a reasonable doubt. Supra Part III.C.2.

The amended statute does not prohibit the consideration of consent evidence for that purpose. Supra Part III.C.2. The opportunity to consider evidence that may raise a reasonable doubt about an element does not shift the burden to the defense to disprove that element. Supra Part III.B. To the extent that

39

evidence of consent may raise a reasonable doubt as to the element of force, the military judge has the authority to craft an appropriate instruction ensuring that the burden of proof remains with the government. Supra Part III.B. Consideration by a properly instructed panel of two different matters -- whether evidence of consent raises a reasonable doubt about the element of force, as well as whether evidence of consent establishes an affirmative defense -- does not render the statute unconstitutional. Id.

The present case is in an interlocutory posture. Consideration of the constitutional issues, as applied to Appellant, may be affected by factors such as the content of instructions, sequence of instructions, and waiver of instructions. Those matters have not been resolved at the trial level. At this point, it would be premature to conclude that the statute, as applied to Appellant, is unconstitutional.

## IV. DECISION

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed. We remand the record of trial to the Judge Advocate General of the Navy for return to the military judge for further proceedings consistent with this opinion.

United States v. Neal, No. 09-5004/NA

    RYAN, J., with whom ERDMANN, J., joins (concurring in part
and dissenting in part):

    I agree with the majority that the procedural posture of
this case does not bar us from exercising jurisdiction under
Article 67(a)(2), Uniform Code of Military Justice (UCMJ), 10
U.S.C. § 867(a)(2) (2006).  However, I have a fundamental
disagreement with how the majority chooses to interpret the
language of Article 120, UCMJ, 10 U.S.C. § 920 (2006), itself.

    The new Article 120, UCMJ, is neither a model of clarity
nor a model statute.  But while I agree that a potentially
unconstitutional statute may be construed in such a way that
renders it constitutional (if such construction is plausible),
United States v. Neal, __ M.J. __ (31-32) (C.A.A.F. 2010), this
judicial band-aid does not change my point of disagreement with
the majority because I do not believe their construction is
plausible.

    It is axiomatic that the government must prove all the
elements of a crime beyond a reasonable doubt.  In re Winship,
397 U.S. 358, 364 (1970).  In my view, given the statute's
definition of the relevant terms, making consent an affirmative
defense under Article 120(r), UCMJ, relieves the government of
this burden and unconstitutionally requires the defendant to
disprove force -- at least where an accused is charged with
aggravated sexual contact using force (or any other offense

under Article 120, UCMJ, alleging the use of force).  This Congress may not do.

"Force" and "consent," as defined by Article 120, UCMJ, are two sides of the same coin.  Compare Article 120(t)(5), UCMJ (defining "force" as "action to compel submission of another or to overcome or prevent another's resistance"), with Article 120(t)(14), UCMJ (defining "consent" as "words or overt acts indicating a freely given agreement to the sexual conduct").  As a matter of logic I would not have thought that anyone would agree that a person can be "forced" to do something the person has consented to or that "consent" can be compelled.  The concepts are diametric opposites and, in my view, cannot coexist with respect to the same action -- which is the problem with holding that the burden to prove consent in this case is on Appellant.

While it is constitutionally permissible to allocate to a defendant the burden of proving an affirmative defense, this is true only so long as the allocation does not relieve the government of its burden.  Martin v. Ohio, 480 U.S. 228, 234 (1987); Patterson v. New York, 432 U.S. 197, 215 (1977).  Merely labeling something an affirmative defense does not automatically give it the qualities necessary to pass constitutional muster. United States v. Clemons, 843 F.2d 741, 752 (3d Cir. 1988); 1

2

Wayne R. LaFave, Substantive Criminal Law § 1.8(c), at 86 (2d ed. 2003).

Under Article 120, UCMJ, "aggravated sexual contact" involves engaging in a sexual act by, among other things (and as charged against Appellant), "using force against [another] person."

> The term 'force' means action to compel submission of another or to overcome or prevent another's resistance by --
>> (A) the use or display of a dangerous weapon or object;
>> (B) the suggestion of possession of a dangerous weapon or object that is used in a manner to cause another to believe it is a dangerous weapon or object; or
>> (C) physical violence, strength, power, or restraint applied to another person, sufficient that the other person could not avoid or escape the sexual conduct.

Article 120(t)(5), UCMJ. If charged with this crime, an accused is permitted to raise consent as an affirmative defense. Article 120(r), UCMJ. "The term 'consent' means words or overt acts indicating a freely given agreement to the sexual conduct at issue by a competent person." Article 120(t)(14), UCMJ. The majority lists the elements of aggravated sexual contact set forth in the statute, notes that the word "consent" does not appear as an element, and is satisfied. __ M.J. at __ (18-20, 28, 30, 39). But the majority fails to reconcile the statutory text as a whole; "force" is more than just a particular type and quantum of physical exertion. But see id. at __ (29, 40).

3

Rather, Congress has defined the term such that it requires a compelling of submission, or an overcoming or preventing of resistance by any of the means listed in Article 120(t)(5)(A)-(C), UCMJ.

Neither compelled submission nor resistance are defined in the statute and therefore must be given their ordinary meanings. To "compel" is "to drive or urge forcefully or irresistibly" or "to cause to do or occur by overwhelming pressure." Merriam-Webster's Collegiate Dictionary 253 (11th ed. 2008). To "submit" is "to yield oneself to the authority or will of another"; "surrender" is a synonym. Id. at 1244. To "resist" is "to exert force in opposition" or "to exert oneself so as to counteract or defeat." Id. at 1060. Taken together, these definitions imply an authority, will, or force that is imposed on another and that is in opposition to the true will of the one imposed upon. Given the statute's focus on submission and resistance, then, evidence of consent presented by the defendant -- i.e., evidence of "words or overt acts indicating a freely given agreement to the sexual conduct at issue by a competent person," Article 120(t)(14), UCMJ -- necessarily and directly disproves a required element of the crime.

Article 120(t)(16), UCMJ, defines an "affirmative defense" as "any special defense which, although not denying that the accused committed the objective acts constituting the offense

4

charged, denies, wholly, or partially, criminal responsibility for those acts."  Accord Rule for Courts-Martial (R.C.M.) 916(a); R.C.M. 916(a) Discussion; United States v. Petty, 132 F.3d 373, 378 (7th Cir. 1997).  But the defense here is not an ordinary affirmative defense.  See Martin, 480 U.S. at 235 (upholding affirmative defense of "self-defense" in murder prosecution because state courts interpreted elements of murder in way that made it possible for all elements of the crime to coexist with self-defense); Patterson, 432 U.S. at 206-07 (upholding affirmative defense of "extreme emotional disturbance" in murder prosecution because defense "[did] not serve to negative any facts of the crime which the State is to prove in order to convict"); Farrell v. Czarnetzky, 566 F.2d 381, 382 (2d Cir. 1977) (upholding unloaded-weapon defense in robbery prosecution because "possession of a weapon actually capable of causing death [was] not a necessary ingredient of the offense").  Rather than allowing a defendant to commit the objective elements of the offense but nonetheless escape liability, consent entirely negates an element of aggravated sexual contact using force; there could be no force, as defined in the statute, where the victim assented to the conduct.[1] "[T]he sole significance of the defendants' evidence concerning

---

[1] This does not encompass situations where the victim may give some indication of assent but cannot legally "consent" under the provisions of Article 120(t)(14), UCMJ.

the so-called 'affirmative defense' [of consent] is to create a reasonable doubt about the existence of an element of the offense," Humanik v. Beyer, 871 F.2d 432, 440 (3d Cir. 1989) -- namely, force.

A defendant may not be required to bear the burden of proof on a defense that "'negative[s] guilt by cancelling out the existence of some required element of the crime.'" Clemons, 843 F.2d at 752 (quoting 1 Wayne LaFave & Austin Scott, Substantive Criminal Law § 1.8(c), at 71, 75 (1986)). "Such shifting of the burden of persuasion with respect to a fact which the State deems so important that it must be either proved or presumed is impermissible under the Due Process Clause." Patterson, 432 U.S. at 215.

Burden allocation is of fundamental importance: "[W]here one party has at stake an interest of transcending value -- as a criminal defendant his liberty -- th[e] margin of error is reduced as to him by the process of placing on the [government] the burden . . . of persuading the factfinder . . . of his guilt beyond a reasonable doubt." Speiser v. Randall, 357 U.S. 513, 525-26 (1958). But "where the defendant is required to prove [or disprove a] critical fact in dispute" in a criminal proceeding, "the likelihood of an erroneous . . . conviction," increases. Mullaney v. Wilbur, 421 U.S. 684, 701 (1975). This is why the Supreme Court has reaffirmed the reasonable-doubt

6

standard time and again and why courts must remain vigilant in upholding the standard against legislative schemes that require defendants to persuade the factfinder as to the elements of a crime.  See Martin, 480 U.S. at 233-34; Patterson, 432 U.S. at 207, 210; Mullaney, 421 U.S. at 701.

Article 120, UCMJ, unconstitutionally burdens the defendant with disproving an element of the government's case.  I respectfully dissent.