# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
ALDYKIEWICZ, SALUSSOLIA, and WALKER
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private E2 DARIUS B. HOLDMAN**
**United States Army, Appellant**

ARMY 20190040

Headquarters, Fort Stewart
David H. Robertson, Military Judge
Colonel Steven M. Ranieri, Staff Judge Advocate

For Appellant: Lieutenant Colonel Tiffany D. Pond, JA; Major Benjamin A. Accinelli, JA; Captain Zachary A. Gray, JA (on brief on specified issues).

For Appellee: Colonel Steven P. Haight, JA; Lieutenant Colonel Wayne H. Williams, JA; Major Craig Schapira, JA; Captain Brian Jones, JA (on brief on specified issues).

31 March 2020

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

ALDYKIEWICZ, Judge:

Contrary to appellant's pleas, a military judge sitting as a general court-martial convicted appellant of threatening to kill his wife, Specialist (SPC) RC[1], and knowingly and wrongfully broadcasting "intimate visual images" of her without her consent, both offenses in violation of Article 134, Uniform Code of Military Justice,

---

[1] By the time of appellant's court-martial, PFC RC had been promoted to the rank of specialist. Though the charge sheet refers to her as PFC, we refer to her throughout this opinion as SPC RC.

HOLDMAN—ARMY 20190040

10 U.S.C. § 934 (2016) [UCMJ].[2]  Upon review of the entire record, we find appellant's conviction of the novel Article 134 offense of wrongfully broadcasting intimate visual images factually insufficient and provide relief in our decretal paragraph.[3]

## BACKGROUND

Appellant and SPC RC met during Advanced Individual Training (AIT) prior to graduating in November 2016.  They married in February 2017.  Following AIT, SPC RC, an Army National Guard soldier, returned to her home in New York City, New York while appellant reported to Hunter Army Airfield, Georgia.

The marriage quickly unraveled and by the summer of 2017, SPC RC wanted a divorce.  Appellant did not.  In June 2017, they argued over the phone and SPC RC blocked appellant's calls.  Through the messaging feature of the Snapchat application, appellant sent SPC RC a message reading, "I swear to God, if you don't call me [right now][4], your naked photos will all be on social media in the next fucking five minutes try me.  And that is the least that I am capable off [sic].  Try me."  She understood that he was referring to nude photos that she had taken of herself and sent to him in February 2017.  She responded, "Go ahead and post your pics.  I am not even going to get a lawyer."  Appellant replied with a threat: "If you report me, [RC], I [swear to God] on my everything I love, I will kill you."

In August 2017, SPC RC started speaking to appellant again and they planned for him to visit her in New York City in October 2017.  She purchased a plane ticket for appellant and picked him up at the airport.  Shortly after appellant's arrival, the

---

[2] Pursuant to appellant's pleas, the military judge also convicted him of one specification each of absence without leave terminated by apprehension, disrespect toward a non-commissioned officer, aggravated assault, and disorderly conduct in violation of Articles 86, 91, 128, and 134, UCMJ.  Appellant was sentenced to confinement for fifteen months and a bad-conduct discharge, however, consistent with the pretrial agreement, the convening authority only approved confinement for fourteen months and a bad-conduct discharge.

[3] Pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), appellant personally presented one matter for this court's consideration: that the military judge erred when he denied appellant's motion to dismiss the Additional Charge as barred by preemption.  We have given full and fair consideration to this matter and find it to be without merit.

[4] Common short hand social media acronyms have been written out for the sake of clarity, though the original Snapchat messages in the record contain the abbreviated versions of these phrases.

couple again began to argue. The tumultuous visit culminated in a physical altercation during which appellant pushed SPC RC off of a bed and choked her three times, the last of which was with sufficient force such that SPC RC had difficulty breathing and was unable to cry out for help. Later that morning, following the assault, SPC RC asked appellant to leave and he flew back to Georgia.

A few days later, SPC RC's friends alerted her that something had happened to her Snapchat account. She logged into Snapchat to find the nude photos she had sent to her husband in February 2017 posted on Snapchat for public consumption. Appellant used SPC RC's password to log into her Snapchat account to post the photos.

During appellant's court-martial, the military judge questioned SPC RC about her initial text response to appellant's threat to post her nude images on social media. Specifically, the military judge asked SPC RC why she told appellant, "Go ahead and post your pics." The following colloquy occurred:

> SPC RC: Because, when he first said that he was going to send it to my mom, I remember we had a conversation about it after, and he said that he just said that because he would never do something like that. So, once he said that again, I was like, "Okay, go ahead and do what you want to do." But I never thought he was going to do it.
>
> MJ: So, you thought this threat was a hollow threat?
>
> SPC RC: Yes, sir.
>
> MJ: Were you intending to give him permission to post your pics?
>
> SPC RC: No, sir.
>
> MJ: Were you intending to call his bluff? In other words, you thought he was just bluffing, and you were challenging him on it?
>
> SPC RC: Yes, sir.

HOLDMAN—ARMY 20190040

**LAW AND DISCUSSION**

We conclude that appellant's conviction of The Specification of The Additional Charge is factually insufficient as the government failed to carry its burden of proving lack of consent beyond a reasonable doubt.

This court reviews factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987). In conducting this unique appellate review, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399.

As charged, The Specification of The Additional Charge alleges that appellant:

> Did, at Hunter Army Airfield, Georgia, on or about 17 October 2017, knowingly, wrongfully, and without the explicit consent of PFC R.C. broadcast intimate visual images of PFC R.C., who was at least 18 years of age when the visual images were created and is identifiable from the visual images or from information displayed in connection with the visual images, when he knew or reasonably should have known that the visual images were made under circumstances in which PFC R.C. retained a reasonable expectation of privacy regarding any broadcast of the visual images, and when he knew or reasonably should have known that the broadcast of the visual images was likely to cause harm, harassment, intimidation, or emotional distress for PFC R.C., such conduct being to the prejudice of good order and discipline in the armed forces and of a nature to bring discredit upon the armed forces.[5]

---

[5] The government's charged specification borrows elements directly from Article 117a (Wrongful broadcast or distribution of intimate visual images), UCMJ (2019). We note that appellant's conduct was not chargeable under Article 117a because his 17 October 2017 conduct predates the effective date of the new punitive statute, 12 December 2017. *See* National Defense Authorization Act for Fiscal Year 2018, Pub. L. No. 115-91, Div. A, Title V, Subtitle D, § 533(a), 131 Stat. 1389.

4

The government was obligated to prove, beyond a reasonable doubt, that appellant broadcast intimate visual images of SPC RC *without her explicit consent.* A fact-finder "may consider evidence of consent at two different levels: (1) as raising a reasonable doubt as to whether the prosecution has met its burden on [an element]; and (2) as to whether the defense has established an affirmative defense." *United States v. Neal*, 68 M.J. 289, 300 (C.A.A.F. 2010). Regardless of whether the evidence negates an element of the charged offense or is considered in support of an affirmative defense, it is always the government's burden to prove all elements beyond a reasonable doubt even when evidence relevant to an element is pertinent to an affirmative defense on which the defense bears the burden. *Id.* "The Constitution precludes shifting the burden of proof from the government to the defense 'with respect to a fact which the State deems so important that it must be either proved or presumed' in order to constitute a crime." *Id.* at 298 (quoting *Patterson v. New York,* 432 U.S. 197, 215 (1977).

The burden was squarely on the government to prove that SPC RC *did not* consent to appellant posting her nude photos online—a necessary element that separates wrongful from otherwise lawful conduct. The government did not carry this burden. On the contrary, the government entered documentary evidence of consent, a Snapchat text message from SPC RC to appellant explicitly telling him, "Go ahead and post your pics." Additionally, during the government's case-in-chief, SPC RC testified that she told appellant orally to "do what you want to do" regarding the images, a statement made some time *after* previously telling appellant to "Go ahead and post your pics." Her explanation for seemingly condoning appellant's actions (i.e., his on-line posting of the images) was that she was calling (what she believed to be) appellant's bluff.

On the facts before us, we conclude simply that the government failed to establish that SPC RC did not consent to appellant posting her nude images online. Specialist RC's mistaken personal belief that appellant would never actually post her nude images online does not negate the fact that she explicitly told appellant, in writing, to go ahead and post the images. Specialist RC gave appellant unqualified consent to post the images and did nothing to revoke or withdraw that consent. While we acknowledge that the images were posted four months after consent was first given, the government failed to establish that SPC RC's previously given consent had been withdrawn, revoked, or limited in some manner, that SPC RC's consent somehow expired with the passage of time, or that appellant knew or should have known that SPC RC did not consent to appellant's posting of the images on-line.[6]

---

[6] We recognize that consent, once given, can be revoked either expressly or

(continued . . .)

5

For the foregoing reasons we conclude the government failed to prove beyond a reasonable doubt that SPC RC did not consent to appellant's action of posting her nude images on Snapchat.

## SENTENCE REASSESSMENT

We are able to reassess the sentence in this case, and do so after a thorough analysis and in accordance with the principles articulated by our superior court in *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013), and *United States v. Sales*, 22 M.J. 305, 307-08 (C.M.A. 1986). A court of criminal appeals must "assure that the sentence is appropriate in relation to the affirmed findings of guilty, [and] that the sentence is no greater than that which would have been imposed if the prejudicial error had not been committed." *Sales*, 22 M.J. at 307-08 (quoting *United States v. Suzuki*, 20 M.J. 248, 249 (C.M.A. 1985)). "If the court can determine to its satisfaction that, absent any error, the sentence adjudged would have been of at least a certain severity, then a sentence of that severity or less will be free of the prejudicial effects of error . . . ." *Sales*, 22 M.J. at 308.

The dismissal of The Specification of The Additional Charge reduces appellant's exposure from a maximum confinement of seven years and eight months to seven years and four months, an insignificant change in the penalty landscape. The gravamen offenses remain – that appellant choked his wife three times and threatened to kill her. Although addressed during her testimony, very little of SPC RC's presentencing testimony discussed the impact on her from appellant's actions in the specification we now set aside. Instead, her testimony focused on the impact of experiencing domestic violence in her marriage and the fear she felt when appellant threatened to kill her.

Lastly, appellant was sentenced by a military judge and the remaining offenses are of the type with which this court has experience and familiarity. We

---

(. . . continued)

impliedly. *See United States v. Dill*, ARMY , 2005 CCA LEXIS 457, at n.1 (Army Ct. Crim. App. 21 Sep. 2005) (this court expressly rejecting the notion that once given, a woman's consent to sexual intercourse and fondling was unable to be revoked); *United States v. Wilson*, NMC 201700098, 2018 CCA LEXIS 451, at * 10 (N.M. Ct. Crim. App. 20 Sep. 2018) (the Navy Marine Corps Court discussing revoked consent in the context of sexual assault, reasoning, "It is axiomatic that awoman may revoke consent to sexual intercourse at any time—even immediately after initially consenting to it."). Similarly, while consent might be given, the facts and circumstances surrounding how and when consent was purportedly given could negate any finding of actual consent. In other words, context matters when evaluating consent.

6

are confident we can reliably determine what sentence would have been imposed at trial. Having conducted the required reassessment, we AFFIRM appellant's approved sentence of confinement for fourteen months and a bad-conduct discharge.

## CONCLUSION

The findings of guilty of The Specification of The Additional Charge and The Additional Charge are SET ASIDE and DISMISSED. The remaining findings of guilty are AFFIRMED. The sentence is AFFIRMED. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings set aside by this decision are ordered restored.

Judge SALUSSOLIA and Judge WALKER concur.

FOR THE COURT:

JOHN P. TAITT
Chief Deputy Clerk of Court